UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| BRIMSTONE STEAK, INC., | ) | |
| f/k/a/BBW, Inc. d/b/a/ Elliot's Diner, | ) | |
| BIG BAD WOLF, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 06-1187 |
| | ) | |
| DAVID RANSBURG, former Mayor & | ) | |
| Liquor Commissioner of the City of | ) | |
| Peoria, in His Individual Capacity, | ) | |
| ERIC TURNER, Deputy Liquor | ) | |
| Commissioner of the Cit of Peoria | ) | |
| in His Individual and Official Capacities | ) | |
| JIM ARDIS, present Mayor & Liquor | ) | |
| Commissioner of the City of Peoria, | ) | |
| in His Individual and Official Capacities, | ) | |
| SONNI WILLIAMS, Assistant | ) | |
| Corporation Counsel of the City of Peoria, | ) | |
| in Her Individual and Official Capacities, | ) | |
| and the CITY OF PEORIA, | ) | |
| a Political Subdivision of the | ) | |
| State of Illinois, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO DISMISS**

Now come the Plaintiffs, BRIMSTONE STEAK, INC., f/k/a BBW, Inc., d/b/a Elliot's

Diner, BIG BAD WOLF, INC., by RICHARD L. STEAGALL, their attorney, and for Plaintiff's

Response to the Motion to Dismiss of Defendants state:

**I.**
**The Allegations That Ardis, Turner, and Williams Are Responsible for Deciding
and Directing the Decision on Brimstone's Liquor License – Which Must be
Accepted as True on the Rule 12 (b)(6) Motion – State a Claim
for the Official Capacity Injunction Sought**

Brimstone seeks an injunction compelling the City of Peoria officials involved in the denial of its liquor license to grant the license. Brimstone alleges a property interest in the City of Peoria liquor license that has denied it without procedural due process.[1] The complaint alleges Mayor Jim Ardis as City of Peoria Liquor Commissioner and Deputy Liquor Commissioner Eric Turner are responsible for deciding whether Brimstone receives the liquor license it is entitled to receive. It also alleges Assistant Corporation Counsel Sonni Williams is directing Mayor Ardis and Deputy Liquor Commissioner Turner to deny Brimstone its liquor license. CmpPart IV ¶ 21.

Defendants say Mayor Ardis is the party responsible for the decision making and the claims for an injunction against Turner and Williams in their Official Capacities must be dismissed. The plaintiff's allegations are that Ardis, Turner, and Williams were all were involved in the deprivation of procedural due process. CmpPart IV ¶ 21. This is a Rule 12 (b) motion to dismiss. The allegations of ¶ 21 must be accepted as true. *Jacobs v. City of Chicago*, 215 F.3d 758, 756 (7th Cir. 2000) (Rule 12 (b)(6) motion admits allegations of complaint).[2]

This is especially true here where defendants have claimed the Liquor Commissioner has absolute immunity for judicial decision making and the Liquor Commissioner's decision refusing a liquor license without procedural due process is not City policy subjecting it to Section 1983 liability. See DefsMem:PartII citing *Killinger v. Port Byron*, 389 F.3d 765 (7th Cir. 2004). If defendants' position is correct, the only means available to remedy the unconstitutional conduct

---

[1]The City does not contest the allegation that the liquor license applied for is a constitutionally protected property interest. See Part B below.

[2]There is no harm in this to defendants who are also joined in their individual capacity. The proper parties to any injunction the court would issue is a matter appropriately addressed on the merits, not on the complaint.

would be an injunction against those involved directing them to grant Brimstone its license or its procedural due process rights. An injunction under Section 1983 is appropriate against a state actor who has a duty to enforce the unconstitutional policy or to prevent its enforcement by others. See *Yellow Springs Exempted School District Board v. Ohio High School Athletic Ass'n*, 443 F.Supp. 753, 756 (S.D.Ohio 1978) and cases cited there.

An injunction is an equitable remedy. Equity acts in personam by exercising the power of the sovereign to compel an individual to do what ought to be done. Yet the Supreme Court has held an injunction against a state or local officer for conduct under color of state law must be brought against the officer in his official capacity. *Blatchford v. Native Village of Noatak*, 501 U.S. 775, 111 S.Ct. 2578 (1991) citing *Missouri v. Fiske*, 290 U.S. 18, 27, 54 S.Ct. 18 (1933). Defendants recognize this fact. They concede an injunction is issued against a state actor in his Official Capacity.

## II.
**The Seventh Circuit's Decision in *Killinger v. Port Byron*, a Small Municipality Whose Liquor Ordinances Followed the Illinois Liquor Code, Has No Application to the City of Peoria's Unique Liquor Code Adopted Under Its Home Rule Powers**

**A.    Defendants Have Not Met Their Burden of Showing on a Rule 12 (b)(6) Motion to Dismiss a Complaint That it is Beyond Doubt Plaintiff Could Prove No Set of Facts That Would Avoid Quasi-Judicial Immunity**

Immunity is an affirmative defense under Fed.R.Civ.Proc. 8. *Green v. Jones*, 473 F.2d 660 (9th Cir. 1973); 5 Wright & Miller, *Federal Practice and Procedure*, § 1271. Plaintiff has no obligation to anticipate an affirmative defense of immunity in the allegations of its complaint. *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920 (1980) (rejecting contention that it was plaintiff's burden to avoid qualified immunity in the allegations of the complaint); *Xechem v.*

*Bristol Myers Squibb Co.*, 372 F.3d 899, 900 (7th Cir. 2004)(relying upon *Gomez v. Toledo* for the principle in a non-civil rights case that a plaintiff has no obligation to meet or anticipate affirmative defenses in the complaint). Even in circumstances where the plaintiff does include allegations anticipating an affirmative defense in the complaint, the defendant of the burden of proving the affirmative defense. See 5 Wright & Miller, *Federal Practice and Procedure*, § 1276.

Defendants refer to a case holding the Mayor/ Liquor Commissioner of the Village of Port Byron in revoking plaintiff's liquor license was subject to quasi-judicial immunity. *Killinger v. Johnson*, 389 F.3d 765, 770 (7th Cir. 2004) relying upon *Reed v. Villate of Shorewood*, 704 F.2d 943, 951 (7th Cir. 1983)(holding Illinois liquor control commissioner enjoys absolute judicial immunity when deciding to renew or revoke a liquor license).

*Killinger* has no application to the City of Peoria's denial of plaintiff's liquor license and two year delay in the proceedings for its issuance. That case involved a revocation of an existing liquor license conducted under the Illinois statutory procedure requiring notice and hearing before the Mayor/Liquor Commissioner. The Liquor Commissioner heard the evidence and then determined if the licensee has violated the provisions or any ordinance or resolution or of any rule or regulation of the State Liquor Commission. 389 F.3d at 769 discussing 235 ILCS 5/7-5 (2004). *Killinger* properly held this is the quasi judicial act of conduct a hearing and making a finding based on the evidence presented.

Here Brimstone alleges deprivation of procedural due process in the refusal to grant its application for a liquor license. Plaintiff found no provision in the Illinois Liquor Control Act of 1935 which sets forth the standards to be employed by Mayor/Liquor Commissioner in the grant

4

or denial of applications for liquor licenses. Section 7-9 provides for review of such decisions as well as for license non-renewals or revocations by the Illinois Liquor Control Commission, but no standards. 235 ILCS 5/7-9 (2004). The City – whose burden it is to establish judicial immunity – says nothing in its memorandum other than the bald statement that a decision on a liquor license application is no different than a decision revoking the license. But Sections 7-5 and 7-9 of the Illinois Liquor Code state otherwise.

The Seventh Circuit has found the federal courts are hesitant to apply the judicial immunity to acts outside the traditional adversary process. *McMillan v. Svetanoff*, 793 F.2d 149, 151 (7th Cir. 1986)(holding state judge's act of firing of court reporter is not subject to judicial immunity). Judicial immunity is given executives only in extraordinary cases reflecting the essence of the judicial process. It must involve the essence of judicial decision-making and discretion of a judicial nature. Id.

The Order of the Illinois Liquor Commission reversing the denial of plaintiff's application for a liquor license by Mayor Ransburg's acting as Liquor Commission is Ex:E to defendant's memorandum. The Commission ruled plaintiff was denied an opportunity to submit additional/supplemental information with application. It reversed and remanded Mayor Ransburg's decision to give plaintiff an opportunity to submit additional/supplement information. This Order does not suggest an adversary consideration of evidence that *McMillan* teaches is the essence of judicial acts entitled to absolute immunity. 793 F.2d at 151.

In any event, it is defendants' burden on the Rule 12 (b)(6) motion to establish that plaintiff could not prove any state of the world consistent with the allegations of the complaint which would avoid absolute judicial immunity. *South Austin Community Council v. SBC*

*Communications, Inc.*, 274 F.2dc 1168, 1170 (7th Cir. 2001). They have not met that burden. Moreover, judicial immunity would extend only to damage relief. The injunction seekign prospective relief of granting the liquor license is not the subject of judicial immunity. See *Cathy's Tap, Inc. v. Village of Mapleton*, 65 F.Supp.2d 874, 894 (C.D.Ill. 1999)(Mihm J.) (holding Mayor acting as Liquor Commissioner had judicial immunity for his act of renewing or revoking a liquor license but it did not extend to prospective declaratory or injunctive relief. *Pulliam v. Allen*, 466 U.S. 522, 542-43, 104 S.Ct. 1970 (1984).

      B.     **Defendants Do Not Contest Plaintiff's Claim of a Constitutionally Protected Property Interest in the Liquor License Application**

The City of Peoria is a home rule municipality. *Hoffman v. Board of Fire and Police Commissioners of Peoria*, 86 Ill.App.3d 505, 408 N.E.2d 98 (1980). Illinois home rule municipalities may enact ordinances on matters of local government that conflict with state statutes. *Burgess v. Board of Fire and Police Commissioners of Quincy*, 209 Ill.App.3d 821, 568 N.E.2d 430 (1991).

Unlike the Village of Port Byron in *Killinger*, the City of Peoria adopted a unique liquor licensing scheme. In order to give a developer assurance that his investment in a proposed liquor licensee will be realized, the City of Peoria's liquor license provides for site approval of the location of a liquor license applicant. Once site approval is approved by the City Council for the sale of liquor, the license is granted so long as the applicant meets the general qualifications for the holder of any liquor license. City of Peoria Code Ch. 3 § 3-91-99. Among those general qualifications for a liquor license applicant are that the applicant not be convicted a disqualifying crime and meet the disclosure, financial, and ownership requirements applicable to all licensees.

City of Peoria Code, Ch. 3 § 3-54-56.

Commendably, the City Attorney does not challenge plaintiff's allegation of a constitutionally protected property interest in the liquor license application due to the site approval. Cmp Part IV ¶ 20. That issue is not before the court.

### III.
### The Complaint's Allegations That the Denial of a Liquor License to the Adjoining Building Has Caused a Decline in the Business of Big Bad Wolf, Inc., The Adult Club States a Claim

The complaint alleges that Big Bad Wolf, Inc. is the holder of the adult use license and operates a nude dancing cabaret next door to the premises of Brimstone Steak, Inc. Cmp. Part II, ¶ 5, p.2 The complaint also alleges as a result of the deprivation of Big Bad Wolf's constitutional rights, it has suffered in its business and lost profits. Cmp. Part V, ¶ 23, p.9.

Defendants seize on the allegations of joinder of Big Bad Wolf as a necessary party. Cmp Part II, ¶ 5, p.2. They then state they know of authority for acceptance of the truth of the allegation in ¶ 23 of deprivation of Big Bad Wolf's constitutional rights and loss of business. Defs'Mem:4. The answer to the defendants' question of authority for the damage claimed by Big Bad Wolf is that the complaint alleges it. *Jacobs v. City of Chicago*, 215 F.3d 758, 756 (7th Cir. 2000) (Rule 12 (b)(6) motion admits allegations of complaint. The sufficiency of proof of that allegation is for later proceedings.

Defendants go further and claim the non-existence of First Amendment right to operate a nude dancing establishment next to a liquor licensee. Defs'Mem:5. Defendants' request for dismissal without authority of their classification of Big Bad Wolf's First Amendment claim must be denied. Plaintiff is not required to plead the facts of a cause action or a precise legal

theory in the complaint. *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998).

The First Amendment forbids otherwise legitimate government actions when they are are motivated by a person's protected speech. A government is free to choose among contractors. But it may not deny a contractor a government contract when motivated by that contractor's First Amendment protected speech. *Board of County Comm'rs v. Umbehr*, 518 U.S. 668, 677, 116 S.Ct. 2342 (1996).

Big Bad Wolf has alleged the City's denial of Brimstone's liquor license was motivated by its exercise of its First Amendment protected right of free expression to display nude dancing. Cmp. Part IV ¶ 19. Eight of the nine Justices of the Supreme Court have recognized that totally nude dancing that is not obscene is entitled to First Amendment protection. *Cathy' Tap, Inc. v. Village of Mapleton*, 65 F.Supp.2d 874, 882-83 (C.D.Ill. 1999)(Mihm J.) discussing *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 565-66, 581, 587-88, 111 S.Ct. 2456 (1991).

In *Cathy's Tap,* Judge Mihm found Justice Souter's articulation of regulations based on the adverse secondary effects of nude dancing that would satisfy the First Amendment was the narrowest reading of the three person plurality that sustained the judgment in *Barnes*. The City of Mapleton argued *Barnes* entitled it to regulate nude dancing because of its secondary effects. Judge Mihm rejected that argument because the Seventh Circuit held that the municipality must identify the secondary effects with particularity. *DiMa v. Corp. v. Halle*, 185 F.3d 823, 829 (7th Cir. 1999).

Judge Mihm was faced with a developed argument in *Cathy's Tap*. This is in stark contrast to he defendant's proclamation of its right to dismissal without and reference to authority or elaboration on the argument advanced here. Judge Mihm denied the motion to

dismiss in *Cathy's Tap* based on *DiMa*. If authority is needed for denial of this perfunctory portion of the defendants' motion to dismiss, *Cathy's Tap* and *DiMa* supply it. If the City were motivated by Big Bad Wolf's nude dancing and there was no basis in the record to justify a conclusion that there were any secondary effects, then plaintiff must prevail. Unlike *Cathy's Tap* which involved legislation, this case involves executive action which is not entitled to the same deference.

## IV.
## This is Not One of the Extraordinary Cases Where *Colorado River* Abstention is Appropriate

### A. The Supreme Court Has Steadfastly Rejected Exhaustion of State Judicial or Administrative Remedies as a Precondition to the Section 1983 Action for Deprivation of Federal Constitutional Rights

The Supreme Court in the landmark Section 1983 case held:

> The federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked.." *Monroe v. Pape*, 365 U.S. 167, 183, 81 S..Ct. 473 (1961).

This is because Section 1983 was enacted to provide a federal remedy for the unwillingness or inability of state officials enforce the federal rights of the Fourteenth Amendment. 365 U.S. at 180.

Since *Monroe v. Pape*, the Supreme Court has steadfastly held exhaustion of state judicial or administrative remedies is not a precondition to the federal Section 1983 action. *McNeese v. Board of Education*, 373 U.S. 668, 83 S.Ct. 1433 (1963) (holding students complaining of racial discrimination in state university were not required to exhaust state administrative remedies to bring Section 1983 action). *Damico v. California*, 389 U.S. 416, 88 S.Ct. 526 (1967) *(per curiam)* (welfare claimants not required to exhaust administrative remedies before bringing their

Section 1983 action challenging the California Welfare Code as a violation of equal protection). *Patsy v. Board of Regents*, 457 U.S. 496, 506-07, 102 S.Ct. 2557 (1982)(Florida professor not required to exhaust state administrative remedies prior to bringing a Section 1983 action challenging the university policy).; *Felder v. Casey*, 487 U.S. 131, 137, 108 S.Ct. 2302 (1988) (Wisconsin statute making notice of claim served on local governmental entity precondition of action has no application to Section 1983 claim because it would place an exhaustion of state remedies precondition on the federal right of action).

    **B.**    **Defendants by Their Reliance on the *Colorado River* Abstention Concede There is No Substantial State Interest Making Abstention Appropriate on the Federalism Grounds of *Younger v. Harris*, *Pullman*, or *Burford* Abstention**

There are four abstention doctrines. (1) The Our Federalism abstention requires federal abstention in an Section 1983 claim for injunction that affects ongoing state proceedings where the state has an important interest and plaintiff would be able to litigate his federal constitutional claims. The criminal prosecutions in the case announcing that doctrine was such a proceeding.. *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746 (1971). (2) *Pullman* abstention is appropriate where state litigation would resolve unsettled questions of state law which could make it unnecessary for the federal court to decide the constitutional question before it. *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643 (1941). (3) *Burford* abstention from a federal injunction is appropriate where the state proceeding involves a complex scheme of regulation necessary to achieving an important state goal of regulation. *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098 (1943)(holding federal court should abstain from an injunction affecting the Texas Railroad Commission's litigation of a dispute over its minimum spacing requirements between oil wells). (4) *Colorado River* abstention is appropriate in the exceptional

circumstance where the judicial administration interest of avoiding peacemeal litigation make abstention of a federal proceeding in favor of a parallel state proceeding appropriate. *Colorado River Water Conversation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236 (1976).

*Younger v. Harris*, *Pullman*, and *Burford* abstention exist to allow state judicial and administrative tribunals to vindicate fundamental state interests where federal constitutional claims can also be litigated in the state forum. Defendants do not rely on the federalism abstention doctrines.

Instead, they invoke *Colorado River* abstention which is not a federalism doctrine, but a matter of judicial administration. It applies to diversity of citizenship cases as well as parallel proceedings in the courts of foreign nations. *AXA Corporate Solutions v. Underwriters Reinsurance Corp.*, 347 F.3d 272, 278 (7th Cir. 2003) (diversity case considering, but rejecting *Colorado River* abstention); *AAR International Inc. v. Nimelias Enterprises, S.A.*, 250 F.3d 510 (7th Cir. 2001)(reversing district court's grant of *Colorado River* abstention in favor of litigation in Greece because the action was not parallel).

> C. **The Limited Administrative Proceeding Before the City of Peoria and Illinois Liquor Commission Subject to Administrative Review in the State Court is not a Parallel Proceeding to This Section 1983 Action and Can Not be Used to Deny Plaintiff Its Chosen Federal Forum for its Constitutional Claims**

Defendants omit from their discussion the narrow scope of *Colorado River* abstention. It is an exception to the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colorado River*, 424 U.S. at 817. It is extraordinary remedy available only on the "clearest of justifications". Id at 824.

Defendants also ignore the Supreme Court's admonition that even the federalism based

abstention doctrines are applied sparingly to give respect to Congress' imposition of a duty on the federal courts to hear claims for deprivation of constitutional rights. *Zwickler v. Koota*, 389 U.S. 241, 88 S.Ct. 444 (1967)(holding *Pullman* abstention inappropriate in plaintiff's action to enjoin enforcement of state penal statute prohibiting distribution of anonymous handbills as contrary to the First Amendment).

Finally, defendants ignore the Supreme Court's repeated rejection of an exhaustion of state judicial or administrative remedies precondition to the Section 1983 claim. See *Patsy v. Board of Regents*, 457 U.S. 496, 506-07, 102 S.Ct. 2557 (1982) and other cases discussed in Part I above.

Defendants claim the extremely narrow exception is warranted here because the Seventh Circuit affirmed Judge Reinhardt's application of *Colorado River* abstention in a Section 1983 case. *Tyrer v. City of South Beloit*, 456 F.3d 744, 750 (7th Cir. 2006). The plaintiff in that case alleged the demolition of his house was a denial of due process of the Fourteenth Amendments. Plaintiff had claimed in the state case that the demolition was a taking of property without compensation contrary to the Fifth and Fourteenth Amendments.

The state court had entered an order for demolition, motions for summary judgment, there was an appeal to the Appellate Court, and a remand for consideration of plaintiff's constitutional claims. Discovery had been done on remand. 456 F.3d at 749, 755. Moreover, the litigation had been ongoing for four years and was far closer to resolution than the federal action. Id at 755.

The Seventh Circuit held that although the taking claim asserted in state court was a different than the due process claim in federal court there was sufficient similarity between the actions to render the state action a parallel proceeding for the purposes of *Colorado River*

abstention. The four years of litigation, substantial discovery taken in the state case, and the duplication of the evidence and facts necessary for resolution of the case was sufficient to support the district court's exercise of its discretion to abstain from hearing the federal case due to the parallel state case. 456 F.3d at 756.

The Seventh Circuit noted the existence of a federal question "weighs heavily against abstention." But the plaintiff in *Tyrer* chose to litigate his federal claims in state court and did so for four years. He had a full and fair opportunity to litigate his claims in his chosen state forum, so. Id at 757.

*Tyrer* must be limited to its unique facts of plaintiff's choice of the state forum for assertion of his federal constitutional claims and the four years of litigation of those claims at the trial court, appellate court, and on remand in the trial court. Extension beyond those facts runs afoul of the "unflagging obligation" of the federal courts to exercise their jurisdiction *Colorado River*, 424 U.S. at 817. It also runs afoul of the Supreme Court's repeated rejection of an exhaustion precondition to the Section 1983 remedy. Here plaintiff did not choose the City of Peoria Liquor Commissioner and Illinois Liquor Commission. It was the only forum available for it to obtain a liquor license.

An application for a liquor license before the City of Peoria Liquor Commissioner is reviewed by the State Liquor Commission and then by the circuit court on administrative review under the Illinois Liquor Code of 1934. 235 ILCS 5/7-9; 235 ILCS 5/7-11 (2004) *Cypress Lounge v. Town of Cicero*, 165 Ill.App.3d 867, 520 N.E.2d 790 (1987); See *Maple Lanes, Inc. V. Meisser*, 186 F.3d 823 (7th Cir. 1999) (discussing review provided for revocation of Illinois liquor license under Section 9 of the Illinois Liquor Code of 1934. 735 ILCS 5/7-9 (2000)).

The City of Peoria is a municipality with a population below 500,000 so the trial de novo before the Liquor Commission provided review of denial of liquor license applications is not applicable. 235 ILCS 5/7-9 (2004); *Daley v. Los Laureles, Inc.*, 22 Ill.App.3d 441, 318 N.E.2d 159 (1974) (review of denial of liquor license application by the Mayor of the City of Chicago employs de novo review and a full trial). Since de novo review is limited by statute to municipalities with a 500,000 or more population, the standard of review is necessarily a deferential one. 235 ILCS 5/7-9 (2004)

The proceeding before the City of Peoria Liquor Commissioner and the Illinois Liquor Commission is not a parallel proceeding to this Section 1983 action. Plaintiff seeks damages for lost profits and an injunction for the liquor license for deprivation of his right to procedural due process of law by the City of Peoria's refusal to grant it the liquor license he was entitled to receive after obtaining site approval. Plaintiff's only remedy in the administrative proceeding is the receipt of the liquor license on site approval which under the City of Peoria's unique liquor ordinance is a property interest. He can not receive damages for the lost profits for the delay in obtaining the liquor license that was his right to obtain two years ago. It is an administrative proceeding, so there is no opportunity for discovery to show the motivation of the defendants and City officials involvement and their departure from established City of Peoria liquor license procedures.

> **D.** **The Supreme Court Has Held *Colorado River* Abstention Inappropriate When The Parallel Proceeding Will Not Provide Complete Resolution of All Disputes; Here the Liquor Commission Proceedings Can Not Resolve Plaintiff's Lost Profits Claim and Its Equal Protection and First Amendment Claims**

*Colorado River* abstention whether applied in an order of dismissal in favor of the

parallel state proceedings or a stay is necessarily based upon the fact the parallel state court litigation "will provide a *complete and prompt* resolution of the issues between the parties." (Emphasis added) *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 28 n. 37, 102 S.Ct. 927, 943 (1983). "If there is any substantial doubt about this, it would be a serious abuse of discretion to grant the stay or dismissal at all." 460 U.S. at 28.

The decision to invoke *Colorado River* abstention "contemplates the federal court will have nothing further to do in resolving any substantive part of the case, whether it stays or dismisses. *Moses H. Cone*, citing 17A Wright & Miller, *Federal Practice and Procedure*, § 4247 (*Colorado River* contemplates complete resolution of the dispute in the parallel proceeding with estoppel effect precluding any further litigation).

*Colorado River* is a doctrine of judicial administration to avoid peacemeal parallel litigation. In the present case, plaintiff's federal damage claims for lost profits on the procedural due process claim will remain for decision after completion of the Liquor Commission proceedings. If there is a final denial of the liquor license, the federal injunction claim will also remain for decision An order granting the motion to dismiss the procedural due process claims will have no effect on the equal protection and First Amendment claims of plaintiff asserted here, which defendants have answered.

*Moses H. Cone* held that if there is substantial doubt about whether the parallel proceeding will completely resolve all disputes, abstention is "a serious abuse of discretion." Here it is a certainty that the Illinois Liquor Commission proceedings will not completely resolve the disputes between the parties.

# V.
# Conclusion

This court should enter an Order denying the defendants' motion to dismiss.

Respectfully submitted,

s/Richard L. Steagall
RICHARD L. STEAGALL,
Attorney for the Plaintiffs

## CERTIFICATE OF SERVICE

      I hereby certify that on **October 10, 2006**, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Randall P. Ray
Corporate Counsel
City of Peoria
419 Fulton, Suite 207
Peoria, IL 61602

                                                s/Richard L. Steagall
                                                RICHARD L. STEAGALL
                                                Attorney for the Plaintiff
                                                Nicoara & Steagall
                                                Commerce Building
                                                416 Main Street, Suite 815
                                                Peoria, IL 61602
                                                Tel:  (309) 674-6085
                                                Fax:  (309) 674-6032
                                                nicsteag@mtco.com