**E-FILED**
Monday, 16 April, 2007  04:17:48 PM
Clerk, U.S. District Court, ILCD

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS, PEORIA DIVISION

**Brimstone Steak, Inc.**,                            )
*formerly known as BBW, d/b/a*             )
*Elliot's Diner*, and                                   )
**Big Bad Wolf, Inc.**,                               )
                                                                 )
    Plaintiffs,                                            )
                                                                 )
             v.                                              )        No.  06-CV-1187
                                                                 )
**David Ransburg**, former Mayor and    )
Liquor Commissioner of the City of        )
Peoria, in his individual capacity,          )
**Eric Turner**, Deputy Liquor               )
Commissioner of the City of Peoria,     )
in his Individual and Official Capacities,  )
**Jim Ardis**, present Mayor & Liquor     )
Commissioner of the City of Peoria,     )
in his Individual and Official Capacities,  )
**Sonni Williams**,  Assistant Corporation )
Counsel of the City of Peoria, in her     )
individual and official capacities, and    )
the **City of Peoria**,                             )
                                                                 )
    Defendants.                                        )

## REPORT AND RECOMMENDATION

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

This case is before the Court for a Report and Recommendation on

Defendants' motion to dismiss for failure to state a claim or, in the

alternative, for abstention (d/e 5).  For the reasons below, the Court recommends the motion be granted in part and denied in part.  The Court apologizes for any delay in making this recommendation, which is attributable solely to the Court's desire to be thorough and correct in its conclusions.

### STANDARD OF REVIEW

The Court takes the allegations in the complaint as true, viewing all facts, as well as any reasonable inferences, in the light most favorable to the plaintiff.  Patel v. City of Chicago, 383 F.3d 569, 572 (7th Cir. 2004).  "'A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514  (2002), quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  A plaintiff is not required to plead specific facts to state a claim-- conclusory allegations are sufficient.  Fed. R. Civ. P. 8; Higgs v. Carver, 286 F.3d 437, 439 (7th Cir. 2002).  The focus at this stage is "whether relief [is] possible based on any legal theory . . . under any set of facts that could be established consistent with the allegations . . . ."  McDonald v. Household International, Inc., 425 F.3d 424, 428 (7th Cir. 2005).

## BACKGROUND

Despite the somewhat complicated factual history, the crux of this dispute is relatively simple.  Plaintiff Brimstone Steak, Inc. ("Brimstone") seeks to operate a restaurant that serves liquor in the same building that already houses a nude dancing establishment operated by Plaintiff Big Bad Wolf, Inc.  ("Big Bad Wolf").  Defendants have thwarted Brimstone's endeavors, by denying Brimstone's application for a liquor license, by refusing to allow Brimstone to cure deficiencies in its application, and by delaying and refusing to reconsider the application as mandated by the Illinois Liquor Control Commission.  The relevant allegations are set forth in more detail below.

From the Complaint, it appears that the businesses or relevant licenses of Plaintiffs were originally operated or owned under one corporation, BBW, Inc. ("BBW").  BBW operated "Elliot's Diner" or "Elliot's Caberet Diner" in the southern part of the building at issue from August 2002 to August 2003, under an existing license to serve alcohol.[1] Sometime thereafter, BBW obtained an adult use permit for nude dancing in the northern part of the same building, on the condition that the Elliot's

---

[1]Before operating the restaurant as "Elliot's Diner," BBW operated it as "Richard's Uptown."

Diner surrender its liquor license.  BBW began operating a nude dancing

caberet in the northern part of the building in April, 2004.

Two separate corporations were subsequently formed --Brimstone

and Big Bad Wolf.  Big Bad Wolf took over BBW's adult use license and the

operation of the nude dancing establishment, operating under the name

"Elliot's" or "Elliot's Caberet."  (Complaint ¶ 13; Ex. A to Def. Mem. d/e 6).

Brimstone took over BBW's operation of Elliot's diner in the southern part

of the building.  Thus, though Brimstone and BBW are apparently separate

corporations, they both appear to conduct business under the name of

"Elliot's," one for dining and one for dancing.  It is not clear what has

become of BBW.

Brimstone applied for a liquor license for Elliot's Diner on June 24,

2004.  Defendant Ransburg, the Mayor at the time, denied the application

on July 22, 2004, in his capacity as liquor control commissioner.

(Complaint ¶ 14; Order of Liquor Control Commissioner, Ex. A to d/e 6).

Ransburg's Order gives two reasons for denying the application: 1) the site

approval for alcohol sales had lapsed[2]; and, 2) the place of business

---

[2]The mayor cannot issue a liquor license "unless the site for which the license is
to be used has been designated by the city council as being suitable for the retail sale of
alcoholic liquors . . ."  Peoria City Code Section 3-92(a).

seeking to sell liquor was located in the same building or structure as a

"sexually oriented adult use business," which was not allowed under Peoria

City Municipal Code Section 18-53(a)(4).[3] [4]

Brimstone appealed the denial to the Illinois Liquor Control

Commission ("State Commission").  On February 18, 2005, the State

Commission reversed Ransburg's decision, for the stated grounds that "the

Applicant was denied an opportunity to submit additional/supplemental

information with his application, which may have been relevant . . ."  (Ex. D,

d/e 6)(*see footnote 4*); Complaint ¶ 13).  The State Commission remanded

"to permit the applicant to present additional/supplemental information . . .

so that the Local Liquor Commissioner may reconsider the application."  Id.

The order also stated it was final for purposes of administrative review.

─────────────────────

[3]Section 18-53(a)(4) of the Peoria City Code states "A sexually oriented adult use shall not be located in a building or structure which contains another business that sells or dispenses in some manner alcoholic beverages."  Section 18-53(a)(5) provides "The sale, use, or consumption of alcoholic beverages on the premises of a sexually oriented adult use is prohibited."   *See also* Peoria City Code Section 3-13 (no license shall be issued for sale of alcohol "in a building in which there is a preexisting, licensed adult use . . .").

[4]Though not attached to the Complaint, the Complaint refers to the orders of Ransburg and the State Commission.  In any event, it is appropriate to take judicial notice of these administrative orders.  Bloedorn v. Fransciso Foods, Inc., 276 F.3d 270 fn. 8 (7th Cir. 2001); Radaszewski ex rel. Radaszewski v. Maram, 383 F.3d 599, 600 (7th Cir.2004)(taking judicial notice of matters in public record and administrative findings).  The Complaint does not refer the Circuit Court's order, but judicial notice of this state court order is also appropriate.  4901 Corp. v. Town of Cicero, 220 F.3d 522 fn. 4 (7th Cir. 2000).

The City of Peoria petitioned for rehearing (which was denied), and then appealed the State Commission's decision to Peoria County Circuit Court. (Ex. F, d/e 6)(*see footnote 4*).  The Circuit Court dismissed the appeal on August 17, 2006, stating that the Commission's order was not a final, appealable order subject to review.  Id.   Despite the City's pending appeal for administrative review, Plaintiffs allege that Defendant Turner, the Deputy Liquor Commissioner, had the authority to act on Brimstone's liquor application "for some or all of the time after July 22, 2004."  (Complaint ¶14).

Plaintiffs assert the denial of the liquor application was "motivated by Big Bad Wolf's display of nude dancing . . . in deprivation of Big Bad Wolf's right of free speech and Brimstone's right of association."  (Complaint ¶ 19).  Brimstone also asserts that Defendants have violated its procedural due process rights by intentionally delaying the reconsideration of the application as mandated by the State Commission. (Complaint ¶ 20). Lastly, Brimstone alleges that Defendants have violated its equal protection rights by treating its liquor application differently from others similarly situated for no rational reason.  (Complaint ¶ 21).

Brimstone seeks money damages for its denied retail opportunities, and Big Bad Wolf seeks money damages "for a decline in business and lost profits . . ." (Complaint ¶ 23).    Brimstone also seeks an injunction requiring the City to issue the liquor license.

## ANALYSIS

### I.    Judicial immunity protects the Liquor Commissioners.

"Absolute judicial immunity shields judicial and quasi-judicial actors from liability for civil damages arising out of the performance of their judicial functions."  Killinger v. Johnson, 389 F.3d 765, 770 (7th Cir. 2004).  In Killinger, a mayor, acting as local liquor commissioner, temporarily closed a business.  Again acting as commissioner, the mayor later held a hearing and suspended the business' license, imposing a fine.  The plaintiff filed a 42 U.S.C. § 1983 action against the mayor, alleging a violation of his procedural due process and equal protection rights.  The lower court granted summary judgment on both claims, and the plaintiff appealed as to the due process claim.  On appeal, the Seventh Circuit in Killinger declined to reach the merits of the due process claim, holding that judicial immunity protected the mayor because his actions were in performance of his judicial functions as liquor commissioner.  389 F.3d at 770.

Similarly, in <u>Reed v. Village of Shorewood</u>, 704 F.2d 943 (7th Cir. 1983), the mayor allegedly "tried to destroy" the plaintiffs' business by "ram[ming] through" ordinances he knew would not withstand review, revoking the plaintiffs' liquor license on "trumped-up charges," and stubbornly refusing to renew their license in spite of repeated reversals by the State Commission.  704 F.2d at 947.  The Seventh Circuit in <u>Reed</u> determined that genuine issues of material fact existed regarding the violation of the plaintiffs' constitutional rights.  704 F.2d at 951.  However, despite the allegations that the mayor knowingly revoked the license on trumped-up charges and repeatedly refused to renew the license for pretextual reasons, the Court held that the mayor was protected by judicial immunity, because those actions were taken in the mayor's judicial capacity as commissioner.  704 F.2d at 951-52.  The Court noted that judicial immunity applied even in the face of "grave procedural errors"[5]:

> The basis of the absolute immunity of judges is less that they are unlikely to commit wrongs than that their wrongs are largely remediable through the appellate process and that forcing judges to defend their judicial rulings by standing trial on the complaint of a disappointed litigant would make it difficult for them to carry out their judicial duties and for society to recruit competent judges.

---

[5]<u>Stump</u>, 435 U.S. at 359.

Reed, 704 F.2d at 952.

This case is about the denial of an application for a liquor license, rather than a renewal or revocation of an existing license as in Reed and Killinger. Neither party cites a case involving an application for a liquor license, nor did the Court find a Seventh Circuit case involving a liquor commissioner's denial of an application, as opposed to a revocation or renewal.[6] Further, the Court notes that Judge Mihm in Cathy's Tap, Inc. v. Village of Mapleton, 65 F.Supp.2d 874, 895 (C.D. Ill. 1999), specifically expressed no opinion on the issue in its published opinion, as the parties had not raised it.

However, the Court believes that the reasoning of Reed and Killinger apply with equal force to a liquor commissioner's denial of an application for a liquor license, in the context of judicial immunity. By state law, both application denials and revocations are appealable to the State

---

[6]The Court did find some published non-precedential district court cases. See, e.g., Diva's, Inc., v. City of Bangor, 176 F.Supp. 2d 30 (D. Me. 2001)(city council members immune from section 1983 suit based on their denial of nude dancing permit); B Street Commons, Inc., 835 F.Supp. 1266 (D.Colo. 1993)(board members immune from suit for damages arising out of denial of permit for nude dancing facility); Brown v. DeBruhl, 468 F.Supp. 513 (D.C.S.C. 1979)(commissioners immune from suit for denying liquor application, but they held fair and impartial hearing on the merits as required by state law); cf Herro v. City of Milwaukee, 817 F.Supp. 768, 773 (E.D. Wis. 1993)(alderpersons not judicially immune for denying tavern license–decision essentially unreviewable on appeal).

Commission and reviewed under the same standards.  235 ILCS 5/7-9;

*See* Reed, 704 F.2d 952 ("although the standard of review is various, in

some cases it is just a substantial-evidence standard, which implies that

the local commissioner is a type of first-line adjudicator, like a trial judge . .

.").[7]  The State Commission reviews the:

> official record of the proceedings of such local liquor control
> commissioner [8] . . ., consider[ing] . . .: (a) whether the local
> liquor control commissioner has proceeded in the manner
> provided by law; (b) whether the order is supported by the
> findings; (c) whether the findings are supported by substantial
> evidence in the light of the whole record."

235 ILCS 5/7-9.  The State Commission may only consider evidence in the

certified official record and  "shall render a decision affirming, reversing or

modifying the order or action reviewed within 30 days . . . ."  Id.[9]  If after

review the State Commission  " . . .decide[s] that the license has been

improperly issued, denied, revoked, suspended . . . it shall enter a [written]

---

[7]The section specifies other actions as well, but they are not necessary to list here.

[8]Peoria City Code Section 3-30 provides that "an official record of proceedings of all public hearings before the local liquor commissioner . . . shall be made.  Any appeal of any order or action taken by the commissioner shall be limited to a review of such official record."

[9]Appeals from the granting or refusing to grant a license from cities with more than 500,000 inhabitants (Chicago) are tried de novo by the license appeal commission of that city.

order in conformity with such findings.  Id.  Orders of the State Commission are subject to review in state court under the Illinois Administrative Procedure Act.  235 ILCS 5/3-13.

Local liquor commissioners do have broad discretion in determining whether an application should be granted.  However, the discretion is not unbridled.  The applicant is entitled to "fair treatment," and the liquor commissioner must show "good cause" for denying an application in subsequent proceedings.  *See* MJ Ontario, Inc. v. Daley, 371 Ill.App.3d 140 (1st Dist. 2007)(upholding denial of late-night liquor license); Ace Produce, Inc. v. State of Illinois Liquor Control Commission, 93 Ill.App.3d 381 (5th Dist. 1981)("Local liquor control commissioners have traditionally been accorded broad discretionary powers to protect the public health, safety and morals in matters concerned with the sale of alcoholic beverages. . . . the test to be applied is whether the commissioner's refusal to issue a license was based on good cause."); Local Liquor Control Commission of Village of Lombard v. State Liquor Control Commission, 59 Ill.App.3d 1, 4 (2d Dist. 1978)(liquor license application entitled to fair treatment; "Illinois courts have held that when a liquor license application is denied, good cause for the denial must be shown by the local commissioner in a

subsequent proceeding."; <u>McCray v. Daley</u>, 133 Ill.App.2d 67 (1971)("In

granting or denying applications for liquor licenses, the local liquor control

commissioner is vested with considerable discretionary power; however,

such power must not be abused, and good cause must be shown for the

denial of an application.")(reversing liquor appeal commission's denial of

liquor license).  The local commissioner's discretionary powers to *revoke* a

license, an act <u>Reed</u> holds is entitled to judicial immunity, are similarly

broad.  *See*  <u>Roach Enterprises, Inc. v. License Appeal Com'n City of

Chicago</u>, 277 Ill.App. 3d 523, 529 (1st Dist. 1996)(Liquor Control Act grants

local commissioners "'considerable discretion in revoking licenses for good

cause"), *quoting* <u>Leong v. Village of Schaumburg</u>, 194 Ill.App.3d 60 (1st

Dist. 1990).

It is true that determinations of license revocations require more

formal proceedings and findings by the liquor commissioner than

determinations of license applications.  *See, e.g.,* 235 ILCS 5/7-5 (for

revocation or suspension, three day notice required, public hearing,

opportunity to appear and defend; evidence reduced to writing, official

record kept, written statement of reasons); <u>Killinger</u>, 389 F.3d at 769

(setting forth statutory procedures required before revocations,

suspensions, and fine impositions); <u>Reed</u>, 704 F.2d at 950-51 (revocation must be made after notice and hearing, reduction of evidence to writing, official record of proceedings, and finding of violation).  This is perhaps the strongest argument against judicial immunity, as it is unclear what sort of proceedings, if any, Ransburg is *required* to conduct before ruling on the application, or what findings he is *required* to make.

However, it is clear that Ransburg's denial of an application is reviewable under the same standard as a revocation, on a certified official record of the proceedings filed within 5 days after the appeal, 235 ILCS 5/7-9.  Further, Ransburg was required to memorialize his decision in a written order explaining the reasons for denial, and to notify the applicant of the decision within 10 days of receiving the police superintendent's investigative report and recommendation.  Peoria City Code § 3-56(c)-(d). In ruling on the application, Ransburg had the authority to examine the applicant under oath, to examine the books and records of the applicant, to hear testimony, take evidence, and to subpoena witnesses and documents (punishable by contempt in circuit court).  Peoria City Code § 3-29(4)-(5); 235 ILCS 5/4-5 (local commissioner has right to examine applicant under

oath, books and records of applicant, hear testimony, take proof and issue subpoenas).

Applying the reasoning of Reed and Killinger to the above state and municipal law governing liquor license applications, the Court concludes that the liquor commissioner's decision to grant or deny a liquor license application is a judicial function entitled to immunity. The "authority conferred and the limits imposed upon a commissioner by Illinois law," in denying an application is similar to a judge's, both in the discretion granted and in the availability of administrative and judicial review of the decision. Killinger, 389 F.3d at 770. This reasoning applies with equal force to Plaintiffs' allegations that Defendants have violated the law by denying or delaying the reconsideration of the license as mandated by the State Commission, as well as to their contention that the municipal code requires the commissioners to grant the license perfunctorily once site approval is granted.[10] (Complaint ¶¶ 15, 17). All this alleged misconduct is "largely

---

[10]These claims are difficult to understand, in light of the City's pending appeal to the Circuit Court at the time Plaintiffs' filed this case. Plaintiffs do not explain why Defendants would have an obligation to reconsider the application or grant the license before the Circuit Court ruled on the City's pending administrative appeal. As to site approval, the Commissioner's order stated that the site approval had lapsed. In any event, even taking all these allegations as true, the judicial commissioners still have absolute immunity for their alleged misconduct in violating mandated procedures.

remediable through the appellate process," <u>Reed</u>, 704 F.2d at 952.  To

hold otherwise would allow disgruntled liquor license applicants (or the

City) to repair to court for money damages against liquor commissioners for

their rulings on applications, forcing them to stand trial and making it

difficult for them to carry out their duties, as well as making it difficult to

recruit competent commissioners.  *See* <u>Reed</u>, 704 F.2d at 952.  The Court

therefore concludes that Ransburg, Turner and Ardis are protected by

absolute judicial immunity from Plaintiffs' claims for civil damages arising

from their actions or inactions as liquor control commissioners regarding

Plaintiffs' liquor license application.

## II.    Quasi-judicial immunity protects Defendant Williams in her function as legal advisor to the liquor commissioners.

Defendant Williams, the City Attorney, does not move for dismissal

on immunity grounds.  Yet the allegations against Williams–that she

advised and directed the actions of the liquor commissioners–compel the

conclusion that she is entitled to quasi-judicial immunity.  <u>Balcerzak v. City</u>

<u>of Milwaukee</u>, 980 F.Supp. 983, 988 (E.D. Wis. 1997)(city attorneys had

quasi-judicial immunity for action as legal advisors to Board members who

had judicial immunity).  Williams, as legal advisor to the liquor

commissioners, acted as a "quasi-law clerk." Id.  Allowing damages against Williams based on the immune actions of the commissioners "would undermine the important purposes of judicial immunity by providing disgruntled litigants an alternative target." Id.

Though Defendants have not moved for dismissal of Williams on this basis, "[s]ua sponte 12(b)(6) dismissals are permitted, provided that a sufficient basis for the court's action is evident from the plaintiff's pleading." Ledford v. Sullivan, 105 F.3d 354, 356 (7th Cir. 1997), citing Apostol v. Landau, 957 F.2d 339, 343 (7th Cir.1992); see, e.g., Hargarten v. Sheahan, 2006 WL 3087108 *6 (N.D. Ill. 2006)(dismissing claim sua sponte though defendants had not discussed claim in motion to dismiss). Keeping Williams in the case solely because she did not move to dismiss on these grounds would undermine the purpose of judicial immunity and unnecessarily dely the progression of the case.  Furthermore, dismissal of Williams on immunity grounds does not work unfair surprise; the legal analysis regarding quasi-judicial immunity for Williams is substantially similar to judicial immunity for the liquor commissioners, issues already raised by Defendants and briefed by the parties.

III.    **The City of Peoria (the "City") remains as a defendant on Plaintiffs' unconstitutional policy claim.**

Plaintiffs sue the City for its "custom and policy making acts." (Complaint para. 10). Plaintiffs assert that Defendants, as alleged final policymakers for the City, refused the liquor license to Brimstone in order to stop or delay the opening of Elliot's Diner, all because of Big Bad Wolf's nude dancing in the same building. (Complaint ¶ 15).

Plaintiffs "policy" claim against the City is effectively a constitutional challenge to sections of the Peoria's Municipal Code which, either facially or as applied, prohibit the issuance of adult use licenses and liquor licenses in the same building.[11] *See footnote 3, supra.; see also* Ben's Bar, Inc. v. Village of Somerset, 316 F.3d 703 (7th Cir. 2003)(example of tavern seeking to enjoin city from enforcing ordinance against sale of alcohol on premises of sexually oriented business); Blue Canary Corp. v. City of Milwaukee, 251 F.3d 1121 (7th Cir. 2001)(example of free speech challenge to City ordinance and refusal to renew strip club license); Joelner v. Village of Washinton Park, 437 F.Supp.2d 832 (S.D.Ill. 2006)(example of free speech challenge against village seeking to enjoin enforcement of adult

---

[11]To the Court, this is the crux of Plaintiffs' claims arising from the denial of the application, as the Commissioner's order applied an already-established municipal code (precluding both licenses in the same building) to deny the application.

entertainment ordinance).[12]

Defendants do not move to dismiss the City or discuss the legal viability of the policy claim in any detail.   Accordingly, the Court makes no recommendation on whether Plaintiffs state a claim against the City, though the Court does note the battle may be uphill, even if Plaintiffs have standing to make the challenge.  *See* Ben's Bar, Inc., 316 F.3d 702, 722 (7th Cir. 2003)(on summary judgment, upholding ordinance prohibiting sale of alcohol on premises of sexually oriented business); Cathy's Tap, Inc., civil case no. 98-1303 (C.D. Ill., Judge Mihm)(on summary judgment, upholding the constitutionality of a Village's ordinance that prohibited liquor sales in conjunction with adult use on premises); City of Chicago v. Pooh Bah Enterprises, 2006 WL 2827608 (Ill. S.Ct., Oct. 5, 2006)(not yet released for publication in permanent law reports and therefore subject to change)(upholding constitutionality of ordinance prohibiting nude dancing in liquor establishments).

## IV.    A decision on Big Bad Wolf's standing should await a further developed factual record and briefing.

The Supreme Court has stated that the

. . . irreducible constitutional minimum of standing contains

---

[12]Legislative immunity from damages would apply to those who enacted those codes, Cathy's Tap, 65 F.Supp.2d at 895.

three elements:  First, the plaintiff must have suffered an "injury in fact"-an invasion of a legally protected interest which is . . . concrete and particularized, . . . .  Second, there must be a causal connection between the injury and the conduct complained of- . . . .  Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)(all internal cites omitted).  ". . . [W]hen the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily 'substantially more difficult' to establish."  Id., 504 U.S. at 562.

Defendants assert that they "know of no cases which recognize relief for a neighbor of an application for a liquor license based on the conjecture that somehow having a liquor licensee next door or in the neighborhood would somehow increase business."  (d/e 6, p. 4).  This is in essence an argument that Big Bad Wolf has not suffered an injury in fact–an invasion of any of its constitutionally protected interests.  Plaintiffs do not illuminate, offering only that they need not specify their legal theories for relief at this stage.  Yet, "[t]he party invoking federal jurisdiction bears the burden of establishing these elements."  Id.  Standing goes to the Court's subject matter jurisdiction, and therefore must be independently

determined by the Court even if not raised by the parties.  Kochert v.
Greater Lafayette Health Serv., Inc., 463 F.3d 710, 714 (7th Cir. 2006).

Big Bad Wolf's free speech claim seems to be that prohibiting a liquor
license anywhere in the same building is not aimed at reducing the adverse
secondary effects of mixing alcohol and nude dancing, but instead aimed at
suppressing Big Bad Wolf's nude dancing by reducing Big Bad Wolf's
economic viability.

It is difficult to fathom how the denial of a liquor license to Brimstone
affects *Big Bad Wolf's* First Amendment free speech rights.  Big Bad Wolf
does not seek to sell liquor in the building.  *Cf.* Ben's Bar, Inc., 316 F.3d
702 (tavern challenged (unsuccessfully) prohibition of sale of alcohol on *its*
premises where nude dancing was offered).[13]  Any economic injury Big Bad
Wolf suffers from not having alcohol sales nearby seems "independent of
expressive or communicative elements of [its] conduct . . ."  Ben's Bar, 316
F.3d at 724.  Plaintiffs appear to want to combine their separate interests
(Brimstone's interest in its liquor license with Big Bad Wolf's interest in its

_____

[13]Similarly, Brimstone does not seek to exercise any free speech
rights of its own.  Brimstone seeks only to sell liquor, not to obtain an adult
use license.  Ben's Bar, 316 F.3d at 723 ("regulation of alcohol sales and
consumption in 'inappropriate locations' is clearly with [government's]
general police powers.").  Brimstone alleges a First Amendment "right to
associate" with Brimstone.  Defendants have not addressed this claim, so
neither does the Court.

adult use license), though, according to the Complaint's allegations, they are separate corporations.

Despite these difficulties, the Court believes the standing issues deserve further factual development and legal briefing.  "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" Lujan, 504 U.S. at 2136-37.   The Court cannot conclude beyond doubt that Big Bad Wolf has pled itself out of standing to challenge the City's ordinances or application thereof.  First, the corporate structure and governance of the relevant businesses is not clear, nor is the history regarding the issuance and use of the liquor and adult use licenses.  Without a clear record on these basic facts, the Court cannot conclude with confidence which corporations, if any, have standing.  Additionally, though Big Bad Wolf's constitutional theory of relief is difficult to discern, Defendants also do not delve deeply enough for the Court to make recommendations beyond doubt.  In any event, Plaintiffs allege that similarly situated businesses have been treated more favorably by the City, which is an apparent equal protection challenge to the ordinances or their applications that arguably might be made by either Plaintiff, depending on

what facts develop.

## V.    The Court is not persuaded on the current record that abstention and stay on the remaining claims is warranted.

Defendants argue that this case is parallel litigation to state

proceedings, and that <u>Colorado River</u>, 424 U.S. 800 (1976) and <u>New</u>

<u>Orleans</u>, 491 U.S. 350 (1989) warrant abstention.  However, federal courts

have a:

> "virtually unflagging obligation . . .to exercise the jurisdiction
> given them. . . Abstention from the exercise of federal
> jurisdiction is the exception, not the rule: The doctrine of
> abstention, under which a District Court may decline to exercise
> or postpone the exercise of its jurisdiction, is an extraordinary
> and narrow exception to the duty of a District Court to
> adjudicate a controversy properly before it. . . The "clearest of
> justifications" must be present for a federal court to stay a
> proceeding pending completion of a state action.

<u>Tyrer v. City of South Beloit</u>, 456 F.3d 744, 751 (7th Cir. 2006), *quoting*

<u>Colorado River</u>, 424 U.S. at 817.

The record does not show what other proceedings are pending, if

any.  Defendants assert in their motion that consideration of Brimstone's

liquor application is back before the local liquor commissioner.  (d/e 6, p. 7;

d/e 5, ¶ 2).  Plaintiffs seem to concede in their response to some sort of

pending  proceeding before the local liquor commissioner (d/e 10).

However, no further information is given, nor has the information been

supplemented.  The Court therefore cannot conclude there *are* any

ongoing proceedings, much less the nature of those proceedings.  In short,

there is not enough information in the record to determine whether the

extraordinary step of abstention is appropriate.  Tyrer, 456 F.3d at 752

(discussing factors in determining whether actions parallel and praising a

"'painstaking comparison of the federal and state complaints'").  A

thoroughly developed record might warrant a different conclusion.

Further, if this recommendation is adopted, the only claim remaining

will be Plaintiffs' First Amendment and Equal Protection challenges to the

City's "policy" of refusing to allow liquor licenses in the same building as

adult use licenses.[14]   "The existence of a federal question typically 'weighs

heavily against abstention.'" Tyrer, 456 F.3d at 756 (quoted cite omitted).

And, at least on the present record, a victory for Plaintiffs on the

constitutionality of the policy or ordinances would not necessarily mean that

---

[14]Brimstone alleges a constitutionally protected property interest in a liquor license and asserts that the commissioners' actions or inactions violated its procedural due process rights.  Even assuming, arguendo, that Brimstone has a constitutionally protected interest in obtaining a liquor license (*but cf*. Bayview-Lofberg's, Inc. v. City of Milwaukee, 905 F.2d 142 (7th Cir. 1990)(Milwaukee ordinances did not create property interest in liquor license)), this claim is not against the City's "policy," but instead against the liquor commissioners for failing to follow required law and procedures.  As already discussed, these kinds of due process claims are barred by judicial immunity.  Killinger, 389 F.3d at 770-71 (mayor, acting as local liquor commissioner, protected by judicial immunity from due process claim, despite allegations that he failed to hold a hearing and improperly singled out business owner).  The remedy to these alleged errors is appeal to the State Commission and state courts.

Brimstone was entitled to a liquor license, if the application was denied on other sustainable grounds.

**IV.    Defendants Ransburg, Turner and Williams should be dismissed in their official capacities, as the claims against them are redundant of the claim against the City.  Defendant Ardis should remain in his official capacities as Mayor and Liquor Commissioner.**

A claim against a government employee in his official capacity is a claim against the government entity he represents.  *See* Sanville v. McCaughtry, 266 F.3d 724, 732-33 (7th Cir. 2001).  Here, the claims arise from the City's official "policy," as alleged implemented by Defendants as final policy makers of the City, to unconstitutionally prohibit the issuance of an adult use license and a liquor license for the same building.  The City is already named as a defendant, so naming the other defendants in their official capacities, as allegedly representing the City's policy, is redundant. *See* Robinson v. Sappington, 351 F.3d 317, 340 (7th Cir. 2003)(dismissing case against judge in official capacity as redundant because brought on same facts and to impose liability on state of Illinois).  However, Defendants do not move to dismiss Ardis on these grounds, and they seem to assert that it is acceptable to retain Ardis in his official capacity to the extent necessary for Plaintiffs to seek injunctive relief.  *But see* Jungels v. Pierce, 825 F.2d 1127, 1129 (7th Cir. 1987)(suing mayor in official capacity

is same as suing city).   Accordingly, the Court recommends that Ardis remain in his official capacities as Mayor and liquor commissioner.

WHEREFORE, the Court RECOMMENDS that Defendants' motion be granted in part and denied in part (d/e 5).  The Court recommends dismissal of Defendants Ardis, Turner, Ransburg and Williams in their individual capacities, on the grounds of judicial immunity or quasi-judicial immunity.  The Court further recommends dismissal of Defendants Turner, Ransburg, and Williams in their official capacities, on the grounds that the suit against them as official policymakers for the City is redundant of the claim against the City.  The Court otherwise recommends that the motion be denied.  If this Recommendation is accepted, the only defendants remaining will be the City and Defendant Ardis in his official capacities as Mayor and Local Liquor Commissioner, and the only claims remaining will be Plaintiffs' First Amendment and Equal Protection claims regarding the City's alleged unconstitutional policy prohibiting the issuance of a liquor license and an adult use license to occupants of the same building.

Any objections to this Report and Recommendation must be filed in writing with the Clerk of the Court within ten working days after service of a copy of this Report and Recommendation. See 28 U.S.C. § 636(b)(1). Failure to timely object will constitute a waiver of objections on appeal.

<u>Video Views, Inc. v. Studio 21, Ltd.</u>, 797 F.2d 538, 539 (7th Cir. 1986).

See also Local Rule 72.2.


ENTER:   April 16, 2007

s/ Byron G. Cudmore

_____

BYRON G. CUDMORE
UNITED STATES MAGISTRATE JUDGE