UNTIED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| **BRIMSTONE STEAK, INC.**, | ) | |
| f/k/a/ BBW, Inc. d/b/a Elliot's Diner, | ) | |
| **BIG BAD WOLF, INC**. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| | ) | Case No. 06-1187 |
| v. | ) | |
| | ) | |
| **DAVID RANSBURG**, former Mayor and | ) | |
| Liquor Commissioner of the City of Peoria, | ) | |
| in his Individual and Official capacities, | ) | |
| **ERIC TURNER**, Deputy Liquor Commissioner | ) | Judge Michael M. Mihm |
| of the City of Peoria, in his Individual and | ) | |
| Official capacities, | ) | |
| **JIM ARDIS**, present Mayor and Liquor | ) | |
| Commissioner of the City of Peoria, in his | ) | |
| Individual and Official capacities, | ) | |
| **SONNI WILLIAMS**, Assistant Corporation | ) | |
| Counsel of the City of Peoria, in her Individual | ) | |
| and Official capacities, and the | ) | |
| **CITY OF PEORIA**, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

On April 16, 2007, a Report and Recommendation [#11] was filed by Magistrate Judge Byron G. Cudmore in the above-capitioned case recommending that Defendants' Motion to Dismiss pursuant to Fed. Rule Civ. P. 12(b)(6) [#5] be granted in part and denied in part. Only Plaintiffs Brimstone, Inc. and Big Bad Wolf, Inc. have filed timely Objections [#12] to the Report and Recommendation. The Defendants have responded to those Objections. The Plaintiffs, in turn, have filed a Motion to Strike [#14] a portion of the Defendants' Response to

1

the Objections. The Court has reviewed the Objections, the Defendants' response, and the Motion to Strike. Magistrate Cudmore's Report and Recommendation will be adopted in part and modified in part. The Plaintiffs' Motion to Strike is denied.

## STANDARD OF REVIEW

A district court reviews *de novo* any portion of a Magistrate Judge's Report and Recommendation to which written objections have been made. *See* Fed. R. Civ. P. 2(b). "The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions." *Id*.

## BACKGROUND

Originally, BBW, Inc. ("BBW") operated Elliot's Caberet Diner[1] ("Elliot's") as a restaurant using a necessary liquor license. Sometime thereafter, BBW obtained an adult use permit for nude pole dancing, on the condition that it surrender its liquor license.

Subsequently, BBW split into two separate corporations: Brimstone, Inc. ("Brimstone") and Big Bad Wolf, Inc. ("Big Bad Wolf"). Big Bad Wolf operated the northern portion of the building as a venue where nude dancing took place. Brimstone operated the southern portion of the building as a restaurant, and wanted to obtain a liquor license for that location. Brimstone applied for a liquor license in June 2004. The application was denied by former mayor David Ransburg, based on: (1) lapse of site approval for alcohol sales, and (2) a relevant section of the Peoria City Municipal Code which prohibited the sale of liquor within the same

---

[1] Before operating the restaurant as "Elliot's Caberet Diner," BBW operated it as "Richard's Uptown."

2

building as a "sexually oriented adult use business."[2]

Brimstone appealed, and the Illinois Liquor Control Commission ("State Commission") remanded for reconsideration, granting Brimstone leave to provide supplemental materials that could be relevant to any decision. The City of Peoria petitioned the Peoria County Circuit Court for review of the State Commission's decision. That appeal was dismissed. The court stated that the Commission's order was not a final appealable order, and was, therefore, not subject to review. No further action has been taken on the matter by the Liquor Commission.

Brimstone and Big Bad Wolf filed a civil rights action pursuant to 42 U.S.C. § 1983. They allege that the City of Peoria and other named parties violated their rights to procedural due process and equal protection. They further assert that the denial of the liquor license application was motivated by the nude dancing taking place in the northern portion of the building, in violation of Big Bad Wolf's right of free speech and Brimstone's right of free association. The following are the named Defendants: David Ransburg ("Ransburg"), former Mayor and Liquor Commissioner; Eric Turner ("Turner"), Deputy Liquor Commissioner; James Ardis ("Ardis"), current Mayor and Liquor Commissioner; Sonni Williams ("Williams"), Counsel for the City of Peoria; and the City of Peoria.

The Defendants filed a Motion to Dismiss. They argued that the allegations against Defendants Ardis, Turner, and Williams in their official capacities were redundant of Plaintiffs'

---

[2]Section 18-53(a)(4) of the Peoria City Code states, "A sexually oriented adult use shall not be located in a building or structure which contains another business that sells or dispenses in some manner alcoholic beverages." Section 18-53(a)(5) provides "the sale, use or consumption of alcoholic beverages on the premises of a sexually oriented adult use is prohibited." *See also* Peoria City Code Section 3-13 (no license shall be issued for sale of alcohol "in a building in which there is a preexisting, licensed adult use...").

cause of action against the City of Peoria. The Defendants further argued that the counts against Defendants Ransburg, Ardis, and Turner in their individual capacities should be dismissed because they are entitled to absolute judicial immunity. Defendants also argued that plaintiff Big Bad Wolf was not entitled to any relief because the Complaint contained no allegation of harm to it. Finally, Defendants argued that the Court should abstain from entertaining the case in light of a pending parallel state proceeding.

Based on the allegations of the Complaint, and the Defendants' Motion to Dismiss, U.S. Magistrate Judge Byron G. Cudmore issued his Report and Recommendation. Judge Cudmore recommended the dismissal of the claims against Defendants Ransburg, Turner, and Ardis, in their individual capacities, due to judicial immunity. The Report also recommended the dismissal of the claim against Williams, in her individual capacity, under a quasi-judicial immunity theory. This decision was based on her function as a legal advisor to the liquor commissioners.

Other recommendations included dismissal of claims against Ransburg, Turner, and Williams in their official capacities. The Report concluded that these claims were redundant due to the suit against the City of Peoria.

The Report further stated that the City of Peoria would remain a defendant because the City had not moved for dismissal. Moreover, Ardis, in his current official capacity as mayor and liquor commissioner, would also remain a defendant in the event the Court granted injunctive relief. Based on the Report, the only claims remaining would be the first amendment and equal protection claims against Mayor Ardis and the City of Peoria.

Additionally, the Magistrate declined to dismiss plaintiff Big Bad Wolf from the suit, as

its possible standing was not precluded by the allegations of the Complaint, and the issue of standing "deserved further factual development and legal briefing." Report and Recommendation, at 21. Finally, the Report did not recommend that abstention was appropriate because, while the Defendants did assert in their Motion to Dismiss that Brimstone's liquor application "was back before the local liquor commissioner," the parties failed to provide any record of those proceedings, such that the Magistrate could conclude that there were any ongoing proceedings, much less determine the nature of those proceeding in order to make a proper ruling on abstention. The Report also added that, under the current state of the law, the existence of a federal question (such as the constitutional issues raised here), "weigh heavily against abstention." Report, at 23.

While neither party objected to the Magistrate's rulings with respect to abstention or standing, Plaintiffs have filed an Objection to the Report's recommendations regarding the dismissal of the procedural due process claim against the City and the application of judicial and qualified immunity.

## ANALYSIS

**A.    Procedural due process claim against the City stands.**

The Plaintiffs first object to the Magistrate's recommendation that their procedural due process claim against City should be dismissed. The Magistrate dismissed the claim sua sponte. The Report addresses the procedural due process claim against the City in footnote 14, stating:

> Brimstone alleges a constitutionally protected property interest in a liquor license and asserts that the commissioners' actions or inactions violated its procedural due process rights. Even assuming, arguendo, that Brimstone has a constitutionally protected interest in obtaining aliquor license (but cf. Bayview-Lofberg's, Inc. v. City of Milwaukee, 905 F.2d 142 (7th Cir. 1990) (Milwaukee ordinances did not create property interest in liquor licenses)), this claim is not

5

> against the City's "policy," but instead against the liquor commissioners for failing to follow required law and procedures...The remedy to these alleged errors is appeal to the State Commission and state courts.

With all due respect, this Court has a different interpretation of the allegations of the Complaint.

Under the decision of <u>Monell v. Department of Social Services of N.Y.</u>, 436 U.S. 658 (1978), a city may be liable for the mayor's actions under § 1983 if a municipal policy causes a constitutional violation. According to case law, a suit against a city may occur if the plaintiff demonstrates the existence of an official policy in any of three ways: "proof of an express policy causing the loss, a widespread practice constituting custom or usage that caused the loss, or causation of the loss by a person with final policymaking authority." <u>Kujawski v. Bd. of Comm'rs</u>, 183 F.3d 734, 737 (7th Cir. 1999).

Upon a close reading of the Complaint, it seems that the Plaintiffs are asserting such a claim, even if not with great clarity or particularity. The Complaint does state, "[t]he City is sued for its custom and policy making acts." The Complaint further alleges that:

> Mayor Ransburg, Deputy Liquor Commissioner Turner, and Mayor Ardis under color of state law acting as alleged in Part III A on the advice of Assistant Corporation Counsel Williams under color of state law as the *policy making agents* of the City of Peoria as specifically alleged in Part III B have delayed the hearing on Brimstone's application for liquor licence with additional submissions for Elliott's Diner, a property right as this stage of the proceedings under Illinois Law in deprivation of Brimstone's right to procedural due process of law guaranteed by the Fourteenth Amendment.

Under the loose strictures of the notice pleading standards of the Federal Rules of Civil Procedures, it seems to this Court that such a procedural due process claim against the City of Peoria has been sufficiently plead. The "courts must follow the norm that a complaint is sufficient if any state of the world consistent with the complaint could support relief, it is not necessary that facts or a theory of relief be elaborated." <u>South Austin Coalition v. SBC</u>

6

Communications, Inc., 274 F.3d 1168, 1171 (7th Cir. 2001). At this early stage in the litigation, where the pleadings are to be broadly construed, granting a 12(b)(6) motion to dismiss on this claim is premature.

The Court's decision to allow Plaintiffs to maintain the procedural due process claim against the City is by no means a decision on the merits of this claim. As the Magistrate noted, it is highly speculative that Plaintiffs even have a protectable property interest in obtaining a liquor license under the Peoria Municipal Code. However, the Defendants have not moved for dismissal on this ground, the "property interest" issue has not been briefed by the parties, and this Court will not issue an advisory opinion on the matter. Again, this Order merely finds that the allegation of the Complaint are sufficient for such a claim to withstand a 12(b)(6) motion to dismiss.

**B.    The application of judicial immunity was appropriate.**

The Plaintiffs object to the Report's recommendation that the Liquor Commissioners were entitled to judicial immunity. Brimstone asserts that, under the Peoria Municipal Code, liquor commissioners are not policy-making positions, but rather are ministerial posts, which do not demand the exercise of discretionary judgment that typically earns the protection of judicial immunity.

In general, judicial immunity extends not only to judges, but also to officials whose duties are functionally comparable to the duties of judges. Michaels v. New Jersey, 50 F. Supp. 2d 353 (D.N.J. 1999). Immunity is necessary in such situations because forcing judges (or their functional equivalents) to stand trial would make it impossible for them to carry out their duties, as well as make it difficult to recruit competent candidates. Fralin & Waldron, Inc. v. County of

Henrico, 474 Supp. 1315 (E.D. Va 1979).  To be applicable to a given official, he or she must be acting with jurisdiction and in accordance with the policies that are set forth.  Henzel v. Gerstein, 608 F.2d 654 (5th Cir. 1979).  Exercise of discretionary judgment is the most notable attribute given to officials which will justify the application of judicial immunity.  Whisman Through Whisman v. Rhinehart, 119 F.3d 1303 (8th Cir. 1997).  Here,  it is clear that the mayor was given jurisdiction to act as local liquor control commissioner by the Liquor Control Act of 1934.  235 ILCS 5/4-2.  Jurisdiction of any of the other named parties is not in dispute in this case.

In recommending that defendants Ransburg, Turner, and Ardis are entitled to judicial immunity, the Magistrate principally relied on the reasoning of two Seventh Circuit cases, Killinger (which provided judicial immunity to a liquor commissioner based on his actions in revoking a liquor license) and Reed (where judicial  immunity was applied to a liquor commissioner concerning his failure to renew a license despite grave procedural errors).  The court in Killinger states that the "authority conferred and the limits imposed upon a [liquor] commissioner by Illinois law" in denying an application is similar to that of a judge, both in the discretion granted and in the availability of administrative and judicial review of the decision. Killinger v. Johnson, 389 F.3d at 770 (7th Cir.2004).   Furthermore, all this alleged misconduct is "largely remediable through the appellate process", Reed v. Village of Shorewood, 704 F.2d at 952 (7th Cir. 1983).

The Plaintiffs argue that the Magistrate's reliance on Killinger and Reed was misplaced because there are significant differences between the denial of a liquor license application (at issue here) and the revocation or nonrenewal of a liquor licence (at issue in Killinger and Reed). For a revocation, Illinois law requires notice, a public hearing, the opportunity to appear and

8

defense, an written identification of the evidence warranting revocation, and an official record of the revocation proceedings. Killinger, 389 F.3d at 769-70. The Plaintiffs correctly point out that when Ransburg denied their application, no adversarial hearing took place, and no presentation of evidence occurred. Pl. Obj., at 6.

However, as stated in the Report and Recommendation, there are also similarities between revocation and application denial. Illinois law states that denial of an application is reviewable by the State Commission and state courts under the same standard as revocation. The mayor must provide a written order explaining his reasons for denial, and he has the authority to examine the applicant under oath, examine books and records, hear testimony, take evidence, and subpoena witnesses and documents. Peoria City Code § 3-29(4)-(5); 235 ILCS 5/4-5. Furthermore, the decision to deny a liquor license application by the commissioner is not absolute. Such decisions are appealable to the court system for alleged violations. For these reasons, the court agrees with the Magistrate Cudmore's assessment and believes that the reasoning of Killinger and Reed should be controlling.

It is important to note that neither this Court, the Magistrate, nor the parties are able to cite to any Seventh Circuit authority involving the denial of an application. This Court believes that the differences between these functions of revoking/renewing versus denying are minimal and therefore finds that the Seventh Circuit reasoning of Reed and Killinger should apply here with equal force.

The Plaintiffs also object to the application of judicial immunity on the grounds that the commissioners' duties are ministerial rather than discretionary. They assert that ministerial actors are mere functionaries and therefore not policymakers entitled to immunity. In support of

this argument, Plaintiffs cite to portions of the Peoria Municipal Code which, if read alone, do seem to minimize the discretion given to this position. However, the Plaintiffs' selective citation misrepresents the capacity of the liquor commissioner to use his or her own judgment to make decisions regarding licensing.

For example, Plaintiffs paraphrase the Peoria code: "In order to give a developer assurance that his investment in a proposed liquor license will be realized, the City of Peoria's liquor ordinances provide for site approval of the location of a liquor license." Pl. Obj., at 6. Simply reading this phrasing could lead one to believe that site approval is a formality, rather than a finding that must be made by the commission. In actuality, site approval requires the city council and liquor commission to analyze many factors. One of these factors is subjective, and seems particularly relevant. It requires a determination of the suitability of a site for alcohol sales based on public health, safety, morals, comfort, and general welfare of the city. Peoria Municipal Code, § 3-92(b)(1). This subjective standard allows the commissioners to use their discretion to make a determination for the community at large.

Furthermore, Plaintiffs seem to believe that prior suitability of the location is controlling even after site approval has been revoked by operation of the code.[3] Simply because a building or structure was previously run under a liquor license, it does not automatically follow that

---

[3]Section 3-97(a) of the Peoria Municipal Code provides:
> The approval for the retail sale of alcoholic liquors under a particular class of license at a particular site shall remain with that site as long as there is a continuous use of that site for the sale of alcoholic liquors under the class of license recommended and approved and as long as no liquor license at that location has been revoked by the mayor. A site shall be deemed to be continuously used as long as there is not a lapse at the site of more than 12 months in the regular conduct of the business of the retail sale of alcoholic liquors under that particular class of license.

present suitability is appropriate. The granting of an adult use license was made contingent on the forfeiture of the previously held liquor license, which is an indicator that the commission did not find the location suitable for both. Also, suitability may be affected by changes in the neighborhood or to the building itself. In this case, the granting of site approval and a subsequent licence would place the structure in violation of the Peoria Municipal Code.[4]

Plaintiffs also state that, according to § 3-96 of the municipal code, the Liquor Commissioner must grant the license if the applicant meets the general qualifications for a holder. Pl. Obj., at 6. The actual section reads,

> If a site has been approved by the city council for retail of alcoholic liquors under a particular class of license, such license for the retail sale of liquors *may* be issued by the mayor if the applicant for the license otherwise qualifies under the provisions of this chapter.

Peoria Municipal Code, § 3-96 (emphasis added). The use of the word "may," as opposed to "must," further supports the conclusion that the commissioner has discretion in determining when a license will be granted. Moreover, while the two qualifications[5] mentioned in the Plaintiffs' Objections are important hurdles for a potential licensee to cross, there are more determinations that must be made by the commissioner before a license should issue. For instance, " No license authorized by this chapter shall be issued to: (3) A person who is not of good moral character and reputation in the community in which he resides." Peoria Municipal Code, § 3-63(3). Here, the liquor commissioner did not have to make this finding because site approval had been statutorily revoked. However, such a subjective determination shows the

---

[4]See footnote 2 above.

[5](1) The applicant has not been convicted of a disqualifying crime, and (2) the applicant has followed the disclosure requirement (financial and ownership). City of Peoria Code, Ch. 3 § 3-54,56.

11

great discretion given to the mayor and the commission, and may be relevant when considering the BBW's connection with the adult use establishment ran by Big Bad Wolf. Furthermore, as in Reed, this alleged misconduct is "largely remediable through the appellate process," another factor which weighs in favor of finding judicial immunity is warranted under the instant circumstances. 704 F.2d at 952.

The Court therefore agrees with Magistrate Cudmore's Report and Recommendation, and concludes that Ransburg, Ardis, and Turner are protected by judicial immunity from Plaintiffs' claims for civil damages arising from their actions or inactions as liquor control commissioners and are dismissed from the case.

**C.    Quasi-Judicial immunity was appropriately applied to Sonni Williams**.

The Plaintiffs' Objection argues that Sonni Williams, assistant corporation counsel for the City of Peoria, should not qualify for immunity because she failed to provide candid advice to the commissioners concerning the procedures used to grant liquor licenses. The Plaintiffs again point selectively to references from the Peoria Municipal Code. The issue of site approval and other general qualification requirements have been discussed above and need not be reiterated at this time. The mayor had great discretion to determine whether to grant a license or approve a site, and Williams's duty to advise was equally broad. The Magistrate's Report and Recommendation cites to several cases where legal advisors were provided with quasi-judicial immunity and those appear to be on point. Therefore, the Court adopts Magistrate Cudmore's sua sponte recommendation of dismissal for Sonni Williams.

**D.    Motion to Strike is denied.**

Plaintiffs urge this Court to strike portions of the Defendants' Response to their objections. The Plaintiffs argue that new theories for dismissal within the Response were not

12

before the Magistrate when he created his Report and Recommendation, and therefore should not be considered. However, the arguments Plaintiffs seek to strike concern matters that were raised by the Magistrate sua sponte. The Defendants' Response was entirely appropriate. Moreover, the Motion to strike is irrelevant because this Court does not rely on the arguments that the Plaintiffs seek to strike.

## CONCLUSION

For the reasons set forth above, the Court adopts in part and modifies in part the Report and Recommendation [#11] of Magistrate Judge Cudmore. Accordingly, Defendants' Motion to Dismiss [#5] is granted in part and denied in part. The Plaintiffs' Motion to Strike [#14] is denied. The remaining claims will be Plaintiffs' First Amendment, Equal Protection, and Due Process challenges against Mayor Ardis, in his official capacity, and the City of Peoria. This matter is referred to Magistrate Judge Cudmore for any further proceedings.

ENTERED this 16th day of August, 2007.

s/Michael M. Mihm
Michael M. Mihm
United States District Judge