**E-FILED**
Tuesday, 19 February, 2008  01:20:53 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| BRIMSTONE STEAK, INC.,<br>f/k/a/BBW, Inc. d/b/a/ Elliot's Diner,<br>BIG BAD WOLF, INC.<br><br>    Plaintiff,<br><br>v.<br><br>DAVID RANSBURG, former Mayor &<br>Liquor Commissioner of the City of<br>Peoria, in His Individual Capacity,<br>ERIC TURNER, Deputy Liquor<br>Commissioner of the Cit of Peoria<br>in His Individual and Official Capacities<br>JIM ARDIS, present Mayor & Liquor<br>Commissioner of the City of Peoria,<br>in His Individual and Official Capacities,<br>SONNI WILLIAMS, Assistant<br>Corporation Counsel of the City of Peoria,<br>in Her Individual and Official Capacities,<br>and the CITY OF PEORIA,<br>a Political Subdivision of the<br>State of Illinois,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Case No. 06-1187<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

---

**PLAINTIFFS' MOTION FOR LEAVE TO FILE AMENDED
COMPLAINT INSTANTER BY AGREEMENT**

---

Now come the Plaintiffs, BRIMSTONE STEAK, INC., f/k/a BBW, Inc., d/b/a Elliot's

Diner and BIG BAD WOLF, INC., by RICHARD L. STEAGALL, their attorney, and moves the

court to enter the following order and for such motion:

1.    The court twice granted plaintiffs an extension of time of the deadline for filing

an amended complaint to January 7, 2008 and February 13, 2008.  It did so because the City of

Peoria Council did not reach the proposed amendment of its ordinances to allow an adult cabaret to obtain a liquor license that was on its December 17, 2007 agenda.

2.     The City Council amended the ordinance on January 8, 2008. Plaintiff's counsel left on a vacation to St. Anton, Austria and Lisbon from January 11, 2008 returning to the office on Monday, January 28, 2008.

3.     The plaintiffs were engaged in conferring with an architect to prepare the plans for site approval under Section 3-91-99 of the City of Peoria Code, which is required before an application for a liquor license can be submitted. City of Peoria Code Ch.3 § 3-54-56.

4.     The application for site approval was submitted to the Clerk of the City of Peoria on February 8, 2008.

5.     Plaintiff's counsel spent an inordinate amount of time with a distressed 78 year old client about a settlement demand that was being prepared on February 6 & 7, 2008.

6.     That kept him from completing the Plaintiff's Response to General Electric Company Defendants' Motions to Dismiss and Plaintiff's Memorandum on Standard of Review in an ERISA action involving complex issues where he represents the plaintiff. *Lehn v. General Electric Company et al*, C.D.Ill. Case No. 07-1180.

7.     He attended the Lincoln Day Banquet of the Peoria County Bar Association on Thursday, February 7, 2008 from 6:30 p.m. to 9:45 p.m. He then drove to St. Charles, Missouri arriving at 2:00 a.m. in order to avoid traffic on I-270 in St. Louis and be at a long scheduled deposition for February 8, 2008 at 10:00 a.m. in *Trentadue v. Cole*, C.D.Ill. Case No. 06-1296.

8.     He completed the deposition in *Trentadue*, met with a private investigator in Edwardsville, Illinois, and arrived at Peoria on February 8, 2008 at 5:15 p.m. He then expended

nine hours on Saturday, February 9th and 14 hours on Sunday, February 10th completing the response and memorandum in *Lehn*.

9.      He participated in a long scheduled meeting with new clients on Monday, February 11, 2008 at 10:00 p.m.  When he gave the flash drive containing the *Lehn* memornadum and response to his legal assistant, he discovered the final document for the response he competed at 1:03 a.m. was comprised.  The last version of the document available was saved at 9:13 p.m.  This required the remainder of the day of Monday, February 11, 2008 to complete the Plaintiff's Response to General Electric Company Defendants' Motions to Dismiss and Plaintiff's Memorandum on Standard of Review.

10.      He took the train to Chicago on Tuesday, February 12, 2008 to arrive and prepare for and anticipate in oral argument in the U.S. Court of Appeals for the Seventh Circuit on February 14, 2008 at 9:30 a.m. *Village of Depue, Illinois v. Exxon Mobil Corp. & Viacom International, Inc. n/k/a CBS Operations, Inc.*, Case No. 07-2311.

11.      He returned to Peoria on February 14, 2008.  He awoke with the chills and beginning flu like symptoms on Friday, February 15, 2008.  He has the following matters due, which requires extensions of time.

> A.      *Moran v. City of Peoria*, C.D.Ill. Case No. 07-1250 Motion to Dismiss of two Defendants – Monday, February 18, 2008
>
> B.      *Thomas v. City of Peoria*, C.D.Ill. Case No. 06-1080 Motion for Summary Judgment of Defendants– Friday, February 15, 2008.
>
> C.      *Alfano v. City of Spring Valley, Illinois et al*, C.D.Ill. Case No. 07-1297 Motion to Dismiss – Monday, February 18, 2008.
>
> D.      *Miles v. Rogers*, C.D.Ill. 08-1012 Motion to Dismiss – Tuesday, February 19, 2008.

      E.     *Chandler v. Huston et al*, C.D.Ill. Case No. 07-1296  Mediation Memorandum – Wednesday, February 20, 2008.

12.     He completed the Plaintiff's Response to Motion to Dismiss of Defendant, James Narczewski & City of Spring Valley, Illinois on Saturday, February 16th and Sunday, February 17th.  On Monday, February 18th – a court holiday for Washington's Birthday – he completed the amended complaint and filed it on Tuesday, February 19, 2008 with this motion for leave to file.

13.     The delay between the Thursday, February 13, 2008 deadline and the Tuesday, February 19, 2008 filing was one court day as Monday, February 18, 2008 was the court holiday of Washington's Birthday.  It is immaterial and should not be grounds for limitation of the issues in this case to what occurred before the City of Peoria passed the amended ordinance on January 8, 2008, which allows plaintiffs to apply for site approval and a liquor license at the adult cabaret that is the subject of this lawsuit.

14.     Plaintiff's counsel asked Randall Ray, defense counsel by e-mail on February 18, 2008 if he had objections to the filing of the Amended Complaint and he responded that he had no objections.

15.     Plaintiffs have submitted the Amended Complaint as an attachment to this motion.

**WHEREFORE**, Plaintiffs, BRIMSTONE STEAK, INC., f/k/a BBW, Inc., d/b/a Elliot's Diner, BIG BAD WOLF, INC., pray the Court enter an Order allowing them to file Plaintiffs' Amended Complaint Instanter.

                              Respectfully submitted,

                              s/Richard L. Steagall
                              RICHARD L. STEAGALL,
                              Attorney for the Plaintiffs

| CERTIFICATE OF SERVICE |
| :---: |

I hereby certify that on **February 19, 2008**, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Randall P. Ray
Corporation Counsel
City of Peoria
419 Fulton, Suite 207
Peoria, IL 61602
Tel: 309-494-8590
Fax: 309-494-8559
Email: Rray@ci.peoria.il.us

                                        s/Richard L. Steagall

RICHARD L. STEAGALL                 GARY L. MORRIS
Nicoara & Steagall                  Attorney at Law
Commerce Building                   411 Hamilton Blvd, Suite 1512
416 Main Street, Suite 815          Peoria, IL 61602
Peoria, IL 61602                    Tel: 309-676-1594
Tel:  (309) 674-6085               Fax: 309-676-7943
Fax:  (309) 674-6032               Email: glmorris@sbcglobal.net
nicsteag@mtco.com

5

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| BRIMSTONE STEAK, INC., | ) | |
| f/k/a/BBW, Inc. d/b/a/ Elliot's Diner, | ) | |
| BIG BAD WOLF, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 06-1187 |
| | ) | |
| JIM ARDIS, present Mayor & Liquor | ) | **JURY DEMAND** |
| Commissioner of the City of Peoria, | ) | |
| in His Individual and Official Capacities, | ) | |
| and the CITY OF PEORIA, | ) | |
| a Political Subdivision of the | ) | |
| State of Illinois, | ) | |
| | ) | |
| Defendants. | ) | |

---

**AMENDED COMPLAINT**

---

Now come the Plaintiffs, BRIMSTONE STEAK, INC. f/k/a BBW, Inc d/b/a Elliott's Diner and BIG BAD WOLF, Inc. f/k/a BBW, Inc., by RICHARD L. STEAGALL, their attorney, and complaining of the Defendants, JIM ARDIS, present Mayor & Liquor Commissioner of the City of Peoria in his Official Capacity and the CITY OF PEORIA, ILLINOIS, a Political Subdivision of the State of Illinois, for its claims state:[1]

**I.**
**Jurisdiction & Venue**

1.      Jurisdiction to hear the plaintiff's claims under the Civil Rights Act of 1871, 42 U.S.C. § 1983 under 28 U.S.C. § 1343 c).

---

[1] Plaintiffs are filing this amended complaint to reflect the City of Peoria's amendment to its Liquor Code enacted on January 8, 2008.  The amended complaint eliminates the defendants dismissed by the court's August 17, 2007 Order. The allegations that are changed from those in the complaint sustained in that Order are noted by italics.

2.     The Plaintiff corporations do business and the individual plaintiffs reside in Peoria County.  The individual *defendant* is a resident and the municipality provides government services in Peoria County, Illinois.

3.     Venue exists under 28 U.S.C. § 1391 (b).  The case is assigned to the Peoria Division of the Central District of Illinois under Local Rule 40.1.

4.     The occurrence complained of occurred on the **22ⁿᵈ** day of **July, 2004** and thereafter in the City of Peoria, County of Peoria, and State of Illinois.

## II.
## The Parties

5.     The plaintiff corporation Brimstone Steak, Inc. ("Brimstone") through a predecessor corporation BBW, Inc. operated Elliott's Diner from August, 2002 to August, 2003, a restaurant which served alcohol under a liquor license for the restaurant that had previously been Richard's Uptown at 7805 N. University Street, Peoria, Illinois.  Plaintiff, Big Bad Wolf, Inc. d/b/a Elliott's operates a nude dancing cabaret on the northern parcel of the lot and building formerly 7805, now 7807 N. University, Peoria, Illinois.  Plaintiff, Big Bad Wolf, Inc.("Big Bad Wolf")  is joined as an *additional* party.

*6.*     Defendant, Jim Ardis, is the present Mayor and Liquor Commissioner of the City of Peoria.  At all times material, he was acting as Liquor Commissioner under color of state law. *He is sued in his Official Capacity on the injunction claim.*

*7.*     Defendant, City of Peoria, Illinois, a Political Subdivision of the State of Illinois is a municipality exercising governmental powers including liquor licensing and adult use licensing.  *The City is sued for conduct of its policy making agents.*

### III.
### The Occurrence

**A.     The Events**

*8.*     The building and lot located at 7805-7807 N. University in Peoria has been divided into two parcels for a number of years.  Richard's Uptown operated a restaurant serving liquor under a liquor license from the City of Peoria and a video store was operated from the northern portion of the building and lot.  BBW, Inc. d/b/a Elliott's Diner operated a restaurant serving alcohol under license from the City of Peoria from August, 2002 to August, 2003 in the southern portion of the building in which Richard's Uptown North had operated.

*9.*     BBW obtained an adult use permit for nude dancing in the northern portion of the building and parcel formerly occupied by the video store.  The City conditioned the adult use license for BBW on a surrender of the liquor license for the Elliott's Diner the corporation had operated in the restaurant that had formerly been called Richard's Uptown before BBW began operation of Elliott's Diner.  A site approval for use of the southern part of the building was issued to BBW, Inc. for operation of a restaurant serving alcohol with the City.  The City granted an adult use license to BBW for the operation of Elliott's featuring nude dancing in the norther portion of the 7805, now 7807 N. University building and lot formerly occupied by the video store and Big Bad Wolf, Inc. has operated the nude dancing cabaret as Elliott's at 7807 N. University since April 15, 2004.

*10.*     Brimstone was incorporated and took over the Elliott's Diner formerly operated by BBW.  Big Bad Wolf, Inc. was incorporated, obtained, and used the adult use license of BBW to operate as Elliot's featuring nude dancing.  Brimstone made application for the liquor license

3

held for the Elliott's Diner restaurant on June 24, 2004.  The application complied with all existing regulations of the City of Peoria Liquor Code and Illinois Liquor Code.

*11.*    Mayor Ransburg acting as Liquor Commissioner denied the application without a hearing and without an opportunity for submission of any deficient materials allowed by the Illinois Liquor Code on July 22, 2004 because Brimstone had an adult use license for the Elliot's cabaret on the north portion of the building.

*12.*    The Illinois Liquor Commission reversed Mayor Ransburg's July 22, 2004 decision and directed Brimstone be allowed the opportunity to make re-submissions to cure any deficiencies in the application.

*13.*    Deputy Liquor Commissioner Turner had the authority to act on Brimstone's application for some or all of the time after July 22, 2004.

*14.*    Mayor Ransburg, Mayor Ardis, Deputy Liquor Commissioner Turner, and Assistant Corporation Counsel Williams knew of the requirement of the Illinois Liquor Code of an opportunity for re-submission of the application but have continued to deny that opportunity and the liquor license allowed under the City of Peoria Code with the intent to delay the opening of Elliott's Diner in the separate southern parcel of the building and the lot at 7805 N. University because of Big Bad Wolf's operation of the adult use cabaret with nude dancing on the separate northern portion of the building.

*15.*    *After the Circuit Court of Peoria County, Illinois dismissed the City of Peoria's complaint for administrative review of the Illinois Liquor Commission decision, Brimstone submitted an amended application for a liquor license to Mayor/Liquor Commissioner Ardis.*

4

*Ardis denied the application in December, 2006.  Brimstone appealed the matter to the Illinois*

*Liquor Commission, where a rehearing motion remains for decision.*

**B.     The January 8, 2008 Amendment of the City of Peoria Adult Use Ordinance and Plaintiff's Response**

*16,     The City Council of Peoria amended Section 18-53 City of Peoria Liquor Code on*

*January 8, 2008 adopting the present ordinance with the changes from the previous version of*

*the ordinance underlined as follows:*

**Sec. 18-53. Limitations on sexually oriented adult uses.**

(a)  *Sexually oriented adult uses shall be permitted subject to the following restrictions:*
    (5)     The sale, use, or consumption of alcoholic beverages on the premises of a sexually oriented adult use is prohibited <u>unless the sexually oriented adult use has a liquor license issued pursuant to Chapter 3 of this Code.</u>

(b)     *The provisions stated in this section shall not apply any sexually oriented adult use in existence and lawfully established at the time article takes effect, so long as the sexually oriented adult use continues to conduct its business at the location it was doing business when this article took effect and does not change the nature of the sexually oriented adult use; provided that such sexually oriented adult use may expand its operation into an adjoining structure which is not closer to a district zoned for residential use or a preexisting school or place of worship and is operated as an integral part of the original location.*[2]  *A true copy of the amendment to Section 18-53 to the City of Peoria Code enacted on January 8, 2008 is attached as Ex:1.*

*17.     The City of Peoria requires that approval of a site for the sale of liquor be made*

*by the City Council before a liquor license is granted. City of Peoria Code Ch. 3 § 3-91-99.  A*

*true copy of Section 3-91-99 of the City of Peoria Code is attached as Ex:2.  After site approval*

*is obtained, applicant must submit an application meeting the general qualifications for a liquor*

---

[2] The amended ordinance has eliminated the following language contained in the prior ordinance, "and provided further than no new liquor license shall be issued to a sexually oriented adult use, in existence and lawfully established, which does not have a liquor license at the time this article takes effect.

5

license of Section 3-54 of the City of Peoria Code which require verification that the applicant is not disqualified by state statute 235 ILCS 5/6-2 (2004). The applicant must also submit a financial statement. City of Peoria Code § 3-55. A true copy of Sections 3-54 & 3-55 of the City of Peoria Code are attached as Ex:3.

18.    On February 8, 2008, Brimstone and Big Bad Wolf filed an application for site approval of the 7807 N. University site that holds the adult cabaret license with the City of Peoria Clerk submitting plans that comply with the applicable City of Peoria ordinances for sites engaged in the business of selling liquor. The application seek approval of the site for a liquor license.

19.    Site approval has existed for 7805 now 7807 N. University since the building located at that site opened in the 1970s until 2004 when site approval was unlawfully withdrawn by the policy making agents of the City of Peoria.

20.    The 7807 N. University property qualifies for site approval under the City of Peoria ordinances and Brimstone and Big Bad Wolf meet all of the qualifications for issuance of a liquor license.

*C.*    **Policy Makers of the City of Peoria, Illinois**

21.    The Mayor of the City of Peoria is also the Liquor Commissioner who issues and renews liquor licenses to applicants who meet the requirements of the Illinois Liquor Control Code and the City of Peoria Code and regulates the conduct of liquor licensees as provided by these Codes.

22.    The denial of the liquor license of Brimstone for Elliott's Diner and the opportunity to make supplements to the application to cure any deficiencies alleged in Part III A

6

is the policy of the City of Peoria, Illinois acting at various times through Mayor Ransburg,

Deputy Liquor Commissioner Turner, Mayor Ardis acting under the advice of Assistant

Corporation Counsel Williams.

## IV.
### Plaintiff's Claims

*23.*    There was in full force and effect the following constitutional provisions and

statutes of the United States, namely:

### Constitution of the United States

### Amendment [I[

### Freedom of religion, speech, and press; peaceful assemblage, petition of grievances

Congress shall make no law .. .. abridging the freedom of speech ..

### Amendment [XIV]

### § 1    Citizenship rights not to be abridged by states

... nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within the jurisdiction the equal protection of the laws.

### Civil Rights Act of 1871, 42 U.S.C. § 1983

Every person who, under color of any statute, ordinance, regulation, custom or usage of any State or Territory or the District of Columbia subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileged or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress...

*24.*    Mayor Ransburg, Deputy Liquor Commissioner Turner, and Mayor Ardis acting

under color of state law acting as alleged in Part III A on the advice of Assistant Corporation

Counsel Williams under color of state law as the policy making agents of the City of Peoria as

7

specifically alleged in Part III *C* in refusing Brimstone to obtain the liquor license BBW had

when it operated Elliott's Diner were motivated by Big Bad Wolf's display of nude dancing in

the northern separate portion of the building at 7807 N. University, Peoria, Illinois in deprivation

of Big Bad Wolf's right of free speech and Brimstone's right of association guaranteed by the

First Amendment made applicable to state action by the guaranty of due process of law of the

Fourteenth Amendment.

    *25.*    Mayor Ransburg, Deputy Liquor Commissioner Turner, and Mayor Ardis under

color of state law acting as alleged in Part III A on the advice of Assistant Corporation Counsel

Williams under color of state law as the policy making agents of the City of Peoria as

specifically alleged in Part III B have *intentionally* delayed the hearing on Brimstone's

application for liquor license with additional submissions for Elliott's Diner *from July 22, 2004*

*to the time of the filing of this amended complaint on February 19, 2008 and will continue to*

*deny the liquor license until the site approval is granted and the liquor license Brimstone and*

*Big Bad Wolf seek and the sale of liquor begins.*

        *A.*    The right to a liquor license on a site that has been approved for the sale of
liquor under Section 3-91-99 is a property right under Illinois law as
established by the City of Peoria under its home rule powers granted under
the Illinois Constitution.

        *B.*    *The City of Peoria acting through its policy making agents as alleged in*
*Part III C had deprived Brimstone of its right to notice and a hearing*
*before a neutral arbiter that is a part of the guaranty of procedural due*
*process of law of the Fourteenth Amendment.*

    *26.*    Mayor Ransburg, Deputy Liquor Commissioner Tuner, and Mayor Ardis under

color of state law acting as alleged in Part III A on the advice of Assistant Corporation Counsel

Williams under color of state law as the policy making agents as specifically alleged in Part III *C*

have *intentionally* denied Brimstone the liquor license under which BBW operated Elliott's Diner and the previous licensee had operated Richard's Uptown in the southern portion of the building at 7805 N. University and *through such conduct have intentionally* treated Brimstone's application for a liquor license differently from those similarly situated without any rational basis for the differing treatment given Brimstone's application in deprivation of Brimstone's right to equal protection of the laws guaranteed by the Fourteenth Amendment.

**V.**
**Plaintiff's Remedies**

*27.*     As a direct and proximate result of one or more of the deprivations of Brimstone's constitutional rights by defendants alleged above, Brimstone has been denied the opportunity to conduct a profitable retail restaurant business with alcoholic beverages to its damage causing it to lose profits in the net amount of $14,400 per month for the *43* month period it has been denied operation of the Elliott's Diner restaurant through *February 1, 2008 totaling $618,600 and which will continue to accrue at the rate of $14,400 a month with interest on the balance of such lost profits until Brimstone opens under site approval and a liquor license granted under the amended Section 18-354 of the City of Peoria Code adopted on January 8, 2008*; further, Big Bad Wolf has been forced to expend attorney's fees in an effort to obtain the liquor license to which it is entitled.

*28.*     As a direct and proximate result of the deprivations of Big Bad Wolf's constitutional rights, Big Bad Wolf has suffered a decline in business and lost profits which exist, but have to be calculated.

*29.*     The deprivations of the constitutional rights of Brimstone and *Big Bad Wolf* are ongoing. The remedy at law for ongoing deprivations of constitutional rights is inadequate

9

entitling plaintiff to an injunction directing defendant, Mayor Ardis in his Official Capacity, to issue the liquor license to Brimstone and *Big Bad Wolf, forthwith and an injunction against the City of Peoria directing it to issue the liquor license to Brimstone and Big Bad Wolf.*

30. *The City of Peoria acting through its policy making agents has delayed and denied Brimstone and Big Bad Wolf the operation of the adult cabaret with a liquor license or a restaurant with a liquor license next door and has done nothing to mitigate the damages suffered by Brimstone and Big Bad Wolf after passage of the amended Section 18-354 of the City of Peoria Code. Such conduct raises the likelihood that the ordinance will be repealed in the future or amended in the future to deny Brimstone and Big Bad Wolf the site approval, liquor license, and adult cabaret at the 7705 and 7707 N. University location as the City of Peoria did when Brimstone and Big Bad Wolf attempted to open the adult cabaret and restaurant with its existing liquor and adult cabaret ordinance when Brimstone and Big Bad Wolf first sought to open the business. Brimstone and Big Bad Wolf are entitled to an injunction against the City of Peoria against amending or repealing the present Section 18-354 of the City of Peoria Code enacted on January 8, 2008 in any which restricts the operation of an adult cabaret and restaurant with liquor at 7805-7807 N. University.*

31. *Brimstone and Big Bad Wolf have incurred attorney's fees and expenses in the prosecution of this action for which it is entitled to an award as a prevailing plaintiff as a part of costs under 42 U.S.C. § 1988.*

## VI.
## Prayer for Relief

**WHEREFORE,** Plaintiff, BRIMSTONE STEAK, INC. f/k/a BBW, Inc and BIG BAD

WOLF, INC., prays for judgment in its favor in the following particulars:

1.     An award of damages in favor of Plaintiff, BRIMSTONE STEAK, INC. f/k/a BBW, Inc. *and BIG BAD WOLF, INC. in the amount of SIX HUNDRED EIGHTEEN THOUSAND SIX HUNDRED DOLLARS ($618,600) through February 1, 2008* accruing at the rate of $14,400 per month plus interest on the outstanding balance *against the Defendant, the CITY OF PEORIA, ILLINOIS, a Political Subdivision of the State of Illinois.*

2.     *A mandatory injunction in favor of Plaintiffs, BRIMSTONE STEAK, INC. f/k/a BBW, Inc. and BIG BAD WOLF, INC.,* against Defendants, JIM ARDIS, present Mayor & Liquor Commissioner of the City of Peoria in his Official Capacity, *and the CITY OF PEORIA, ILLINOIS, a Political Subdivision of the State of Illinois, directing site approval for the 7807 N. University Street and issuance of the liquor license to Plaintiffs forthwith.*

3.     *A mandatory injunction in favor of Plaintiffs, BRIMSTONE STEAK, INC. f/k/a BBW, Inc. and BIG BAD WOLF, INC. and against the Defendant, the CITY OF PEORIA, ILLINOIS, a Political Subdivision of the State of Illinois enjoining it to refrain from amending or repealing the present Section 18-354 of the City of Peoria Code enacted on January 8, 2008 in any which restricts the operation of an adult cabaret and restaurant with liquor at 7805-7807 N. University.*

4.     An award of the amount of attorney's fees and expenses incurred by Plaintiffs, BRIMSTONE STEAK, INC. f/k/a BBW, Inc and BIG BAD WOLF, INC., in prosecuting this action as a part of costs under 42 U.S.C. § 1988.

### PLAINTIFFS DEMAND A TRIAL BY JURY

> BRIMSTONE STEAK, INC. f/k/a BBW, Inc. d/b/a Elliott's Diner, and BIG BAD WOLF, INC., Plaintiffs
>
> By:  s/Richard L. Steagall
> RICHARD L. STEAGALL, one of their attorneys

| CERTIFICATE OF SERVICE |
| --- |

I hereby certify that on **February 19, 2008**, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Randall P. Ray
Corporation Counsel
City of Peoria
419 Fulton, Suite 207
Peoria, IL 61602
Tel: 309-494-8590
Fax: 309-494-8559
Email: Rray@ci.peoria.il.us

s/Richard L. Steagall

RICHARD L. STEAGALL                          GARY L. MORRIS
Nicoara & Steagall                           Attorney at Law
416 Main Street, Suite 815                   411 Hamilton Boulevard, Suite 1512
Commerce Building                            Peoria, IL 61602
Peoria, IL 61602-1103                        Telephone (309)
Tel (309) 674-6085                           E-mail:glmorris@sbcglobal.net
E-mail: nicsteag@mtco.com

12

E-FILED
Tuesday, 19 February, 2008  01:22:05 PM
Clerk, U.S. District Court, ILCD

### AN ORDINANCE AMENDING CHAPTER 18 OF THE CODE OF THE CITY OF PEORIA RELATING TO ADULT BUSINESSES

**WHEREAS,** the City of Peoria, Illinois is a home rule municipality under Article VII, Section 6 of the Illinois Constitution of 1970; and

**WHEREAS,** the City Council of the City of Peoria repeats and incorporates by reference the findings in Section 18-50(b) of the Code of the City of Peoria.

**NOW, THEREFORE, BE IT ORDAINED BY THE CITY COUNCIL OF THE CITY OF PEORIA, ILLINOIS,** as follows:

Section 1.    Section 18-53 of the Code of the City of Peoria is hereby amended by adding the following underlined words and deleting the following stricken words:

**Sec. 18-53.  Limitations on sexually oriented adult uses.**

\*        \*        \*

(5)    The sale, use, or consumption of alcoholic beverages on the premises of a sexually oriented adult use is prohibited. unless the sexually oriented adult use has a liquor license issued pursuant to Chapter 3 of this Code.

(b)    The provisions stated in this section shall not apply to any sexually oriented adult use in existence and lawfully established at the time this article takes effect, so long as the sexually oriented adult use continues to conduct its business at the location it was doing business when this article took effect and does not change the nature of the sexually oriented adult use; provided that such sexually oriented adult use may expand its operation into an adjoining structure which is not closer to a district zoned for residential use or a preexisting school or place of worship and is operated as an integral part of the original location;. and provided further that no new liquor license shall be issued to a sexually oriented adult use, in existence and lawfully established, which does not have a liquor license at the time this article takes effect.

Section 2.   This ordinance shall be in full force and effect immediately upon passage and publication according to law.

PASSED BY THE CITY COUNCIL OF THE CITY OF PEORIA, ILLINOIS, this _____ day of December, 2007.

APPROVED:

_____
Mayor

ATTEST:

_____
City Clerk

EXAMINED AND APPROVED:

_____
Corporation Counsel


CITY OF PEORIA

# REQUEST FOR COUNCIL ACTION

**To:     Honorable Mayor and Members of the City**

**From:   Charles Randy Oliver**
**        City Manager**

---

**AGENDA DATE REQUESTED:** December 17, 2007

**ACTION REQUESTED:** Adopt the attached Ordinance amending Chapter 18 of the Code of the City of Peoria relating to adult businesses.

**BACKGROUND:** On October 21, 2003, the City Council amended Section 18-53 of the Code, pertaining to adult uses, to provide that no new liquor license be issued to a sexually oriented adult use. On November 21, 2007, the Seventh Circuit Court of Appeals, whose territory includes Illinois, decided the case of <u>Joelner v. Village of Washington Park, Illinois</u>. In that case it held that the Village's provisions allowing existing adult uses to maintain liquor licenses while prohibiting new adult uses from obtaining liquor licenses did not exist for the purpose of limiting secondary effects of adult business but rather for the purpose of limiting competition. While that portion of the case is not applicable to Peoria, the Court went on to add *dicta* stating that even if the Village were attempting to combat secondary effects with its alcohol ban and intermediate scrutiny thus applied, the ordinance could not survive. The Court stated that the only way to advance the interest in reducing secondary effects is through a total ban of alcohol on the premises of adult entertainment establishments. Thus, under the Seventh Circuit's reasoning, Peoria's ordinance allowing existing adult uses to have liquor licenses while prohibiting new adult businesses from having them, cannot survive court scrutiny and, therefore, should be amended.

**FINANCIAL IMPACT:** N/A

**NEIGHBORHOOD CONCERNS:** In 2003 there were neighbors who spoke against allowing alcohol in adult uses outside of downtown.

**IMPACT IF APPROVED:** Ordinance would be constitutional and defensible in Federal Court.

**IMPACT IF DENIED:** Ordinance may well not withstand intermediate scrutiny.

**ALTERNATIVES:** N/A

**EEO CERTIFICATION NUMBER:** N/A

**RELATIONSHIP TO THE COMPREHENSIVE PLAN:** Consistent with efficient government.

---

### REQUIRED SIGNATURES

**Department Director**     _____ /S/ _____
                             Legal Department

**Finance Director**        _____
                             (Certification of Availability of Funds)

**Corporation Counsel**     _____ /S/ _____

**City Manager**            _____ /S/ _____

*Updated 12/7/04*

City of Peoria Code, Ch. 3, §§ 3-91-99[1]                    Amended Complaint Ex:2

## ARTICLE III. RETAIL SALE LOCATIONS

### Sec. 3-91. Record of licenses, approved locations; officers to receive copies; numbering of licenses; notice of issuance or revocation.

The mayor shall keep or cause to be kept a copy or record of all licenses issued by him and of all approved locations for the retail sale of alcoholic liquors as indicated by this chapter, and all licenses issued shall be given a number beginning with number one. The city clerk shall furnish the mayor, the city manager, city treasurer, and the superintendent of police with a copy of the licenses issued and the locations approved for the retail sale of alcoholic liquor. Upon the issuance of any license or revocation of any license, the mayor shall give written notice of such action to each of these officers within 48 hours of such action.

(Code 1957, § 3-45)

### Sec. 3-92. Suitability of site.

(a)   The mayor shall not issue any license authorized under this chapter, other than temporary event licenses, unless the site for which the license is to be used has been designated by the city council as being suitable for the retail sale of alcoholic liquors under a specified class of license, as set forth in section 3-52 of this chapter, and such license to be issued conforms to the license classification approved for such site. For purposes of this section, Class B and Class B-1 shall be treated as same class of license, Class E and E-1 shall be treated as same class of license, Class C and C-1 shall be treated as same class of license, C-2 and C-3 shall be treated as same class of license, C-4 and C-5 shall be treated as same class of license.

(b)   The city council and the liquor commission, in determining whether to approve or recommend approval, respectively, of the suitability of a site for the retail sale of alcoholic liquors, shall consider all relevant facts relative to the specified class of license and proposed site, including, but not limited to, the following:

   (1)   That the establishment, maintenance, location or operation of the proposed site will not be detrimental to or endanger the public health, safety, morals, comfort or general welfare of the city.

---

[1] The City of Peoria Code is contained in the Municode Online Library located at: http://www.municode.com/Resources/gateway.asp?pid=10183&sid=13

These provisions were downloaded from that site,  formatted in Wordperfect, converted to pdf, and filed.

(2)   That the proposed site and use conforms to all applicable regulations of the city's Zoning Code, Appendix B. For the purposes of this section, a site may be rejected even if it is a legal, non-conforming use under the Zoning Code, if the proposed site could not be developed under current zoning regulations.

(3)   That the proposed site and use, when considered separately or in conjunction with other licensed liquor establishments, will not be injurious to the use and enjoyment of other property in the vicinity, including residences, schools, hospitals, places of worship and other businesses.

(4)   That the proposed site will not generate more automobile traffic and/or parking demand than the existing streets and off-street parking can reasonably accommodate.

(5)   That the structure on or to be placed on the proposed site complies with applicable building and fire codes of the city.

(6)   That motor fuel will not be pumped directly into motor vehicles as a part of the business to be operated on the proposed site; provided, however, that this prohibition shall not apply in the case of Class C-2, C-3, C-4 and C-5 licenses.

(7)   That the proposed site will not be injurious to the uses and enjoyment of other property in the immediate vicinity for the purposes already permitted, nor substantially diminish and impair property values with the neighborhood in which it is to be located.

(c)   Prior to granting site approval, the city council may impose any additional conditions or limitations upon establishment, location, construction, maintenance or operation of the proposed liquor establishment as may in its judgment be necessary for protection of the public interest and to secure compliance with the standards specified above. The city council may require such evidence and guarantees as it deems necessary, as proof that the conditions imposed are being and will be fulfilled. Where additional limitations and conditions are imposed by the city council, the same must be implemented prior to the sale of alcoholic liquor unless the city council adopts another date. Failure to fulfill the conditions and/or limitations shall be grounds for revocation of the site approval and liquor license granted for such site after a hearing held pursuant to section 3-29.

(Code 1957, § 3-46; Ord. No. 13508, § 1, 1-5-93; Ord. No. 15596, § 2, 3-2-04; Ord. No. 15625, § 1, 6-1-04; Ord. No. 15673, § 1, 8-17-04)

**Sec. 3-93. Application for site approval.**

(a)   Any owner of real property desiring to have his property used for the purpose of the retail sale of alcoholic liquors must make application to the mayor for approval by the city council of such site for such use. The application shall include a site plan of the property, which plan shall conform to the requirements of the zoning ordinance. A non-fundable filing fee of $150.00 shall be paid for filing each such application. The applicant shall submit with the initial application a

complete list of names and addresses of the last person to whom taxes were assessed for any property within 300 feet of the proposed site, together with a sworn statement that the applicant has caused a notice of the application to be sent to all such property owners and caused a notice in the form prescribed by the local liquor commissioner to be posted at the location of the premises, in a place clearly visible from the public way. Such notices must advise said property owners or the public of the pendency of the request for site approval, the date; time and location of the hearing before the liquor commission, and that they have an opportunity to attend and present their input at the hearing.

(b)   The 300-foot distance shall be measured from the nearest point of a licensed building or other licensed property (e.g., a beer garden) to the property line of any other property.

(c)   The mayor will then forward the application to the liquor commission for its recommendation as to the appropriateness of the site for the retail sale of alcoholic liquors.

(Code 1957, § 3-47; Ord. No. 15325, § 1, 5-28-02)

**Sec. 3-94. Liquor commission to recommend site approval or disapproval.**

Within 45 days after the submission of the application for the approval of a site for the retail sale of alcoholic liquors, the liquor commission shall hold a hearing and promptly thereafter recommend to the city council whether such site should be approved for a particular class of license, as is specified in section 3-52, for the retail sale of alcoholic liquors.

(Code 1957, § 3-48; Ord. No. 15325, § 1, 5-28-02)

**Sec. 3-95. Approval or disapproval by city council**.

After receipt of the recommendation from the liquor commission, the city council shall approve or disapprove the site for the retail sale of alcoholic liquors. If the city council has disapproved a site for the retail sale of liquors only once, no application for the same site and use will be considered by the city council or the liquor commission for a period of six months from the date of disapproval unless the applicant can establish a substantial change in circumstances relating to the reasons for disapproval. If the city council has disapproved a site for the retail sale of alcoholic liquors two or more times, no application for the same site and use will be considered by the city council or the liquor commission for a period of 12 months of the date of the last disapproval unless the applicant can establish a substantial change in circumstances relating to the reasons for disapproval.

(Code 1957, § 3-49)

3

**Sec. 3-96. Issuance of license**.

If a site has been approved by the city council for the retail sale of alcoholic liquors under a particular class of license, such license for the retail sale of alcoholic liquors may be issued by the mayor if the applicant for such license otherwise qualifies under the provisions of this chapter.

(Code 1957, § 3-50)

**Sec. 3-97. Duration of site approval; extensions.**

(a)   The approval for the retail sale of alcoholic liquors under a particular class of license at a particular site shall remain with that site as long as there is a continuous use of that site for the sale of alcoholic liquors under the class of license recommended and approved and as long as no liquor license at that location has been revoked by the mayor. A site shall be deemed to be continuously used as long as there is not a lapse at the site of more than 12 months in the regular conduct of the business of the retail sale of alcoholic liquors under that particular class of license.

(b)   If the regular conduct or the business of the retail sale of alcoholic liquors has not commenced at a particular site within 12 months of the approval of that site, such approval shall automatically expire, unless prior to such expiration date the liquor commission has extended the period of time to commence the regular conduct of the business of the retail sale of alcoholic liquors, as provided in this section. The liquor commission shall have the authority, without approval of the city council, to extend the time for commencing the service of alcoholic liquors for a period not to exceed 12 months. In determining whether to grant an extension, the liquor commission may consider the following factors, among others:

>    (1)   That demolition, construction, remodeling or repair of a structure has been unexpectedly delayed;
>
>    (2)   That tenants or other occupants of the premises have failed to timely relinquish possession in spite of diligent effort by the applicant;
>
>    (3)   That a liquor license application is pending and has not been approved;
>
>    (4)   That circumstances regarding the suitability of the site under section 3-92 of this Code have not materially changed since site approval was granted.

(Code 1957, § 3-51; ; Ord. No. 13610, § 1, 8-3-93; Ord. No. 13629, § 1, 9-21-93)

**Sec. 3-98. Prohibited in residential zoning district.**

No site shall be approved for the retail sale of any alcoholicliquors in any residential zoning district as defined in the zoningordinance, except where such sale is incidental to a recreational special use approved by the city council.

(Code 1957, § 3-52; Ord. No. 14299, § 1, 5-27-97)

**Sec. 3-99. Existing sites.**

All sites for which licenses are now issued shall be deemed approved for the retail sale of alcoholic liquors under the class of license in effect as of July 2, 1974, and all sites which have been approved for the retail sale of alcoholic liquors subsequent to July 2, 1974, but without a recommendation as to the particular class of license shall be deemed approved for the retail sale of alcoholic liquors under the class of license issued by the mayor.

(Code 1957, § 3-59)

City of Peoria Code, Ch. 3, §§ 3-54, 3-55[1]                    Amended Complaint Ex:3

**Sec. 3-54. Contents of application.**

(a) An applicant for a license to sell alcoholic liquor at retail shall submit to the mayor an application in writing under oath, stating:

(1)   The name, age and address of the applicant in the case of an individual; in the case of a not-for-profit corporation, the date of incorporation and the name, age and address of its president and secretary; in the case of a partnership, corporation for profit or club, the date of incorporation and the names, addresses and ages of the officers, directors, managers and any stockholders owning or controlling the voting rights to more than five percent of the stock of such corporation.

(2)   The citizenship of the applicant, his place of birth, and if a naturalized citizen, the time and place of his naturalization.

(3)   The character of business of the applicant; and in case of a corporation, the objects for which it was formed.

(4)   The length of time that such applicant has been in business of the character referred to in subsection (a)(3) of this section, including a complete list of locations and inclusive dates during which applicant has been in such business; and in addition in the case of a corporation, the date on which its charter was issued.

(5)   An itemized listing of the goods, wares and merchandise on hand at the time application is made.

(6)   The location and description of the premises or place of business which is to be operated under the license, including a scale drawing of such premises clearly indicating all areas within or adjoining the building or structure which are to be used in connection with the retail sale of alcoholic liquor or are accessible from it.

(7)   A statement whether applicant has made application for a licensee to sell at retail alcoholic liquor on premises other than described in this application to this or any other state or political subdivision thereof, including the date, location and disposition of such

---

[1]  The City of Peoria Code is contained in the Municode Online Library located at:
http://www.municode.com/Resources/gateway.asp?pid=10183&sid=13

These provisions were downloaded from that site, formatted in Wordperfect, converted to pdf, and filed.

application.

(8)   A statement whether applicant has ever been charged with or convicted of a felony or of being a keeper of a house of ill fame, prostitution, pandering, or other crime opposed to decency and morality or of a gambling offense, or is otherwise disqualified to receive a license by reason of any matter or thing contained in this chapter, detailing the dates and locations and results of any such charges or convictions.

(9)   A statement whether applicant is an alcoholic or has received treatment for alcoholism or any drinking problem, or has been involved in any incident involving the police, including traffic, in which he was intoxicated, detailing the dates, locations and results of any such treatment or incident.

(10)   A statement whether applicant has been involved in any battery, assault, fight or public disorder detailing dates, locations and disposition of any such incidents.

(11)   Whether a previous license by any state or subdivision thereof or by the federal government has been revoked or suspended, and the reasons therefor, and in the case of a suspension, the length thereof.

(12)   The length of time the applicant has resided in the city prior to the submission of the application, and all addresses at which the applicant has resided in the past ten years.

(13)   That the applicant, a copartner in the case of a partnership, or any officer, manager, director or any stockholder of a corporation owning or controlling the voting right to in the aggregate more than 20 percent of the stock of the corporation, has not been issued a federal gaming device stamp or federal wagering stamp by the federal government for the current tax period, and that no federal gaming device stamp or federal wagering stamp has been issued by the federal government for the premises for the current tax period.

(14)   That the applicant will not violate any ordinances of the city or laws of the state or of the United States in the conduct of his place of business.

(b)   In addition to the foregoing information, such application shall contain such other and further information as the mayor may, by rule or regulation not inconsistent with the law, prescribe.

(c)   If such application is made in behalf of a partnership, firm, association, club or corporation, then the same shall be signed and sworn to by at least two members of such partnership or the president and secretary of such corporation or club. The applicant shall submit with the application documentary proof of his interest in the premises, whether by lease, deed, or otherwise; and in case the applicant is the owner of the premises, all outstanding mortgages against the premises.
(Code 1957, § 3-31)

**Sec. 3-55. Financial disclosure of applicant**.

(a)   Each applicant, upon filing of an original application, and each licensee, upon application for renewal of an existing license, shall file with the city clerk in duplicate a financial statement on forms prescribed by the mayor, which shall include:

> (1)   On an original application, a detailed statement of assets and liabilities of the business, and upon a renewal application if the mayor, at his option, so desires.
>
> (2)   The names and addresses of all secured creditors and a description of the security interest of each.
>
> (3)   The names and addresses of all creditors who have any right to control the use or disposition of the business or any asset thereof.
>
> (4)   The name and address of each creditor who holds indebtedness of the business totaling in the aggregate 20 percent or more of the net worth of the business.
>
> (5)   A detailed profit and loss statement for the last preceding business year, if the mayor, at his option, so desires.
>
> (6)   In the case of a corporation, a copy of the latest annual report required to be filed pursuant to section 157.95 of the Business Corporation Act of Illinois (805 ILCS 5/1.01).
>
> (7)   A detailed description of all agreements or obligations which purport to bind any successor to the present applicant or licensee to continue to purchase, rent or accept any goods, wares, or services from a specified supplier thereof.

(b)   The financial statements required to be filed by this section shall be confidential except for official purposes, and it shall be unlawful for any person to divulge such information except for official purposes or under order of a court of competent jurisdiction.
(Code 1957, § 3-33)

3