## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | | |
|---|---|---|
| BRIMSTONE STEAK, INC., f/k/a BBW, Inc., d/b/a Elliot's Diner, BIG BAD WOLF, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 06-1187 |
| JIM ARDIS, present Mayor & Liquor Commissioner of the City of Peoria, in His Individual and Official Capacities, and the CITY OF PEORIA, a Political Subdivision of the State of Illinois, | ) ) ) ) ) ) | Judge Michael M. Mihm |
| Defendants. | ) ) | |

## DEFENDANTS' MOTION TO DISMISS

NOW COME Defendants, Jim Ardis and the City of Peoria, by and through their attorneys, Thomas G. DiCianni, Paul N. Keller, and Gregory S. Mathews, and respectfully move this Court to dismiss Plaintiff's Amended Complaint, pursuant to Fed. R. Civ. P. 12(1) and 12(b)(6), and state as follows:

## I. STATEMENT OF CASE

Plaintiffs have filed an Amended Complaint purporting to state a cause of action for violations of federally protected rights of freedom of association, equal protection and due process, in the Defendants' handling of applications for liquor licenses for two separate corporate entities.

For the relevant time frame, BBW, Inc. operated a restaurant which served alcohol in one half of a building. A second corporation, Big Bad Wolf, Inc., was established to run a nude

dance cabaret in the other half of the building, but to do so, BBW had to relinquish its liquor license so the cabaret complied with Sec. 18-53(a)(4) of the City Code of Peoria which states:

> (4)     a sexually oriented adult use shall not be located in a building or structure which contains another business that sells or dispenses in some manner alcoholic beverages.

Thereafter, BBW stopped restaurant operations and dissolved. Brimstone Steak, Inc., was subsequently incorporated and has sought its own liquor license for the same restaurant space which previously gave up its license. In essence, the Amended Complaint seeks to make two separate corporations one so that one corporate entity which has allegedly been deprived may assert a claim based on a separate corporation's constitutional rights. On February 4, 2008, Big Bad Wolf applied for a liquor license of its own and is going through that process now.

## II.     ALLEGATIONS OF THE AMENDED COMPLAINT

According to the Amended Complaint, Plaintiff, BBW, Inc., a non-party, was a corporation which operated a diner from August 2002 to August 2003, in the south half of a building located at 7805 N. University Street in Peoria (Comp. ¶5). The restaurant served alcohol (Id. ¶5). Plaintiff Big Bad Wolf, Inc., is another corporation which has operated a nude dancing cabaret, in the north half of the same structure, at 7807 N. University Street, since April 15, 2004, pursuant to an adult use license issued by the City (Id. ¶9). The license was granted on the condition that BBW, Inc., surrender its license to sell liquor in the diner (Id.).

Plaintiff, Brimstone Steak, Inc., was incorporated and took over the diner (Id. ¶10). On June 24, 2004, Brimstone applied for a license to sell liquor at the diner and on July 22, 2004, the application was denied because Brimstone operated a nude cabaret in the same building (Id. ¶11).

On appeal by Brimstone, the Illinois Liquor Commission reversed the denial of the application and directed the City and Liquor Commissioner to accept additional submittals with Brimstone's application for a liquor license (Id. ¶12). The City thereafter filed a complaint for administrative review of the Illinois Liquor Commissioner's order, which was dismissed, and Brimstone then submitted an amended application for a liquor license, which was denied in December 2006 (Id. ¶15). Brimstone appealed to the Liquor Commission (Id.). On April 4, 2007, Brimstone's appeal was denied by the Illinois Liquor Commission (Order attached as Exhibit A).[1] Brimstone has filed a motion for rehearing on the Commissioner's order denying Brimstone's appeal which remains pending (Comp., ¶15).

On January 8, 2005, the City amended its liquor code in a fashion which permits Big Bad Wolf, Inc., to apply for a liquor license (Id. ¶16). On February 8, 2008, Big Bad Wolf applied for site approval to sell liquor in its cabaret (Id. ¶18). On March 25, 2008, the City Council voted to deny the application for a Class B liquor license for Big Bad Wolf, Inc.

The Amended Complaint alleges that the denial of Brimstone's application for a liquor license previously held by a different corporation was motivated by Big Bad Wolf's display of nude dancing in the same building (Id. ¶24). The denial allegedly violates Big Bad Wolf's right of free speech and Brimstone's right of association, made applicable by the guarantee of due process (Id.). The right to a liquor license on a site approved for sale of liquor is then alleged to be a property right for purposes of a due process claim based on the intentional delay of a hearing on Brimstone's application for a liquor license since 2004 (Id. ¶25). For good measure, the

---

[1]The Court is authorized to take judicial notice of pending matters of public record. Bloedern v. Francisco Foods, Inc., 276 F.2d 270 fn. 8 (7th Cir. 2001).

Amended Complaint asserts Brimstone has been denied equal protection from being treated differently from those similarly situated, without reference to who they may be.

There is no claim in the Amended Complaint that the available remedial procedures are themselves inadequate or of any unconstitutional statute or ordinance.

## ARGUMENT

**1.     Plaintiffs Have Not Stated a Due Process Claim Because on its Face, the Amended Complaint Shows That Due Process Has Been Afforded.**

The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.  Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908 (1981).  Plaintiff here has had an opportunity to be heard.  In the present case, the Plaintiffs' appeal to the Illinois Liquor Commission pends before that body and no final order has been entered.  The Amended Complaint alleges that the original site approval application was denied within thirty (30) days of the application, which complies with Sec. 3-56 of the Liquor Code. The denial was based on the lapse of prior site approval and the presence, within the same building or structure, of a sexually oriented adult use business in contravention of Sec. 18-53(a)(4) of the Code of the City of Peoria.  Brimstone appealed to the State Liquor Commission, and obtained a favorable order which the City took to the Circuit Court for Administrative Review pursuant to 735 ILCS 5/3-103.  When the City's Complaint was dismissed, the City considered Plaintiffs' additional submittals and denied the application within the appropriate time frame.  The Commission upheld the denial of the license on April 4, 2007, but the matter remains with the Illinois Liquor Commission because Brimstone filed a Motion to Reconsider.

The Liquor Control Act also provides that the State Commission's administrative decision is subject to judicial review as outlined in the Illinois Administrative Review Law Act, 735 ILCS 5/3-101 et seq.  When a post deprivation remedy offers sufficient protection to redress a claimed due process violation, a federal court should not sit as an appellate court to the Illinois Liquor Commission, and when post-deprivation remedies are sufficient to provide the applicant an opportunity to be heard in a meaningful and timely manner, the applicant fails to state a valid due process claim.  R.V. Pine Tree, Inc. v. Village of Forest Park, 947 F.Supp. 342, 347 (N.D.Ill 1996).

Further, the allegation of delay is not actionable in the present case because the Illinois Liquor Commission has upheld the City's denial of the license application.  Plaintiffs cannot state a claim for due process damages when they would not have gained anything had the hearing on its appeal been conducted more promptly.  Yellow Cab Co. v. City of Chicago, 919 F.Supp. 1133, 1138 (N.D.Ill. 1996).  As a result of the foregoing, Plaintiffs' Amended Complaint should be dismissed.

**2.      Brimstone Has No Federally Protected Property Right to a Liquor License to Sustain a Due Process Claim.**

To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.  He must instead have a legitimate expectation of entitlement to it.  Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701 (1972).  "Although Roth instructs that the underlying substantive interest is created by 'an independent source such as state law,' [it is] federal constitutional laws [that] determines whether the interest rises to the level of a 'legitimate claim of entitlement.'"  Memphis Light, Gas and Water Division v. Craft, 436 U.S. 1, 9 (1978).

5

Illinois State courts and Federal courts have admittedly differed over whether a liquor license is property. In N & N Catering Co., Inc. v. City of Chicago, 37 F.Supp.2d 1056 (N.D. Ill. 1999), the court analyzed the debate. N & N reviewed the validity of an ordinance which had the potential to revoke existing liquor licenses. Analyzing state law, the court noted that the Illinois Liquor Control Act expressly states that a liquor license "shall not constitute property," and that it shall be "purely a privilege." Id. at 1066, 1067. After reviewing numerous state and federal court cases, the court in N & N held that a liquor license did not constitute a property right.

Subsequently, in Club Misty, Inc. v. Leski, 208 F.3d 615 (7th Cir. 2000), the Seventh Circuit reviewed another city ordinance which if upheld would have caused two plaintiff-tavern owners to lose existing licenses. There the court specifically analyzed a licensee's right to renew an existing license and held that the refusal to renew a license was the equivalent of revoking a license, making the license a property interest and entitling the licensee to 14th Amendment protection.

In the present case, however, Brimstone never had a liquor license. It complains only of the denial of its application for a liquor license. Bayview-Lofberg's, Inc. v. City of Milwaukee, 905 F.2d 142 (7th Cir. 1990), which considered whether a properly completed liquor license application created an entitlement to a liquor license is on point. The Seventh Circuit there held that the Milwaukee Code of Ordinances, §90-5-8 (C-I) did not create a set of criteria which made the issuance of a liquor license mandatory. As in Peoria, the Milwaukee ordinance allowed for recommendations on the application based on, ". . . the appropriateness of the location . . . whether such location will create undesirable neighborhood problems . . . and whether there is an over concentration of licensed establishments in the neighborhood." (Id. at 145).

6

The City Code of Peoria, Article III, Sec. 3-92, establishes similar considerations (Exhibit B attached).  Upon approval of the site by the City Council, the Peoria Code provides that a license, ". . . may be issued, by the mayor."  Art. III, Sec. 3-96 (Exhibit B attached).  When the municipal code allows discretion in deciding whether to grant or deny a license for the sale of liquor there exists no property interest protection under the due process clause of the fourteenth amendment. Bayview-Lofberg's, Inc. at 146.  As a result, in Bayview-Lofberg's, the Seventh Circuit upheld the dismissal of plaintiff's complaint on a motion to dismiss.  Likewise, Plaintiffs' Complaint here should be dismissed.

To the extent that Plaintiffs' Amended Complaint seeks relief for substantive due process violations it should be noted that the protection afforded by the doctrine of substantive due process only encompasses laws affecting fundamental rights, and as corporations, Brimstone and Big Bad Wolf do not have such fundamental rights.  National Paint Coatings Association v. City of Chicago, 45 F.3d 1124, 1129 (7th Cir. 1995) cert denied 515 U.S. 1143 (1995).  In cases where the Plaintiff complains that it has been unreasonably deprived of a property right without alleging a violation of some other constitutional right or that available state remedies are inadequate, the Plaintiff has not stated a substantive due process claim.  New Burnham Prairie Homes, Inc. v. Village of Furnham, 910 F.2d 1474 (7th Cir. 1990).  Taken together, the Plaintiffs' Amended Complaint and Sec. 18-53(a)(4) of the Code of the City of Peoria, establish that the act of denying the Brimstone liquor license was not arbitrary and irrational, but based on Code provisions, and therefore a substantive due process claim cannot be maintained.  Rolenz v. Parrott, 883 F.2d 551 (7th Cir. 1989).

3.      **Big Bad Wolf's Claim is Moot.**

Big Bad Wolf filed its application for a Class B liquor license on February 8, 2008, and the matter came before the City Council for review on March 25, 2008.  Big Bad Wolf makes a due process claim on its own behalf for the license application as it is going through the process at the present time.  Plaintiffs application for an alternative Class A liquor license is pending and set to be heard shortly.  To the extent any due process claim is asserted in the Amended Complaint on behalf of Big Bad Wolf for events since February 8, 2008, it is either unripe or moot as there is no controversy between the parties.

A justiciable controversy is one that is appropriate for judicial determination as distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot.  Aetna Life Insurance Co. v. Haworth, 300 U.S. 227, 240 (1936), citations omitted.  The plaintiff must do more than merely speculate that he again will experience injury as the result of a particular practice.  Los Angeles v. Lyons, 461 U.S. 95, 101-02 (1982).  Before a federal court will assume jurisdiction, the plaintiff "must allege some threatened or actual injury resulting from the putatively illegal action . . ." Linda R.S. v. Richard D., 410 U.S. 614 (1973).

In order to avoid a mootness defense, Big Bad Wolf speculates that the City may reverse its January 8, 2008, amendment to the City Code which opened the door for Big Bad Wolf to apply for its own liquor license.  Big Bad Wolf, however, has presented applications for two types of liquor licenses for approval, one which was denied by the City Council on March 25, 2008 (See Minutes attached as Exhibit C.  Plaintiff here seems to assert the "capable of repetition yet evading review" principle in ¶30 of the Complaint in order to keep a controversy alive, but this is mere speculation rather than a reasonable expectation or a demonstrable probability

8

required to save a due process claim.  <u>Magnuson v. City of Hickory Hills</u>, 933 F.2d 562, 565 (7th

Cir. 1991).

For the foregoing reasons, Plaintiffs' Amended Complaint should be dismissed.


Respectfully submitted,

JIM ARDIS and CITY OF PEORIA


By:___/s/ Gregory S. Mathews_____
        GREGORY S. MATHEWS




Thomas G. DiCianni
Paul N. Keller
Gregory S. Mathews
ANCEL, GLINK, DIAMOND, BUSH, DICIANNI & KRAFTHEFER, P.C.
140 South Dearborn Street, Sixth Floor
Chicago, Illinois  60603
(312) 782-7606
(312) 782-0943 Fax

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned, one of the attorneys of record herein, hereby certifies that on April 1, 2008, the foregoing **Defendants' Motion to Dismiss** was electronically filed with the Clerk of the U.S. District Court using the CM/ECF System, which will send notification of such filing to the following:  Gary L. Morris at glmorris@sbcglobal.net; Randall Ray at rray@ci.peoria.il.us; and Richard L. Steagall at nicseag@mtco.com.

s/   Gregory S. Mathews
GREGORY S. MATHEWS, Attorney Bar # 3127427
One of the attorneys for Defendants


**ANCEL, GLINK, DIAMOND, BUSH,
DICIANNI & KRAFTHEFER, P.C.**
140 South Dearborn Street, Sixth Floor
Chicago, Illinois 60603
Telephone:     (312) 782-7606
Facsimile:     (312) 782-0943
E-Mail:          gmathews@ancelglink.com

10

**E-FILED**
Tuesday, 01 April, 2008  03:42:17 PM
Clerk, U.S. District Court, ILCD

# EXHIBIT A

EXHIBIT 1

RECEIVED
APR 1 2 2007
LEGAL DEPT.

## STATE OF ILLINOIS
## LIQUOR CONTROL COMMISSION

In the Matter of:                    )
                                     )    No.    07 SA 12
Brimstone Steak, Inc.                )    ON THE RECORD
d/b/a Elliot's Cabaret Diner         )
7805 N University                    )
Peoria, IL 61614                     )

## ORDER

**THIS MATTER** coming to be heard for Oral Argument, all parties being present and/ or represented by counsel and the Commission being fully advised on the premises;

**IT IS HEREBY ORDERED:**

1.   The Local Liquor Control Commission proceeded in the manner provided by law.
2.   That the decision of the Local Liquor Control Commissioner was supported by the manifest weight of the evidence.
3.   The Local Liquor Commissioner's Order dated December 12, 2006, denying the applicant's liquor application, is hereby affirmed.

## THIS IS A FINAL ORDER FOR PURPOSES OF ADMINISTRATIVE REVIEW

Pursuant to 235 ILCS Sec. 5/7-10 of the Illinois Liquor Control Act, a Petition for Rehearing may be filed with this Commission within twenty (20) days form the service of this Order. The date of mailing is deemed to be the date of service. If the parties wish to pursue an Administrative Review action in the Circuit Court, the Petition for Rehearing must be filed within twenty (20) days after service of this Order as such Petition is a jurisdictional prerequisite to the Administrative Review.

**ENTERED** before the Illinois Liquor Control Commission at Chicago, Illinois, on April 4, 2007,


Daniel J. Downes, Commissioner                Stephen B. Schnorf, Commissioner


John Aguilar, Commissioner                    Lillibeth Lopez, Commissioner


**A T T E S T:**


Susan McNulty, Secretary

STATE OF ILLINOIS        )
                         ) SS
COUNTY OF COOK           )

The undersigned certifies that the foregoing ORDER was mailed prepaid certified on April __10__, 2007, at the United States Post Office, 100 West Randolph Street, Chicago, Illinois 60601; addressed to the following:

Randall Ray
Corporation Counsel
419 Fulton St, Ste 207
Peoria, IL 61602

Certified Mail No. 7006 2760 0005 105 1 2293

Gary L. Morris
Associated Bank Plaza
411 Hamilton
Suite 1512
Peoria, IL 61602

Certified Mail No. 7006 2760 0005 1051 2304

EXHIBIT 2

RECEIVED

MAY 0 1 2007

LEGAL DEPT.

STATE OF ILLINOIS
LIQUOR CONTROL COMMISSION

IN THE MATTER OF:          )
                           )
BRIMSTONE STEAKS, INC., d/b/a )    Appeal No. 07-SA 12
ELLIOT'S CABARET DINER,    )
7805 North University      )
Peoria, Illinois 61614     )

### PETITION FOR REHEARING

Now comes BRIMSTONE STEAKS, INC., in its own proper person and
by and through its attorney, GARY L. MORRIS, and pursuant to 235
ILCS 5/7-10, petitions this Commission for a rehearing in the
above-captioned matter.    In support of its Petition, BRIMSTONE
STEAKS, INC., states as follows:

1.    The Local Liquor Commissioner denied a Class license
restaurant with Subclass 1A (2:00 a.m.) and 2 (live entertainment)
liquor application filed by BRIMSTONE STEAKS, INC., d/b/a ELLIOT'S
CABARET DINER on December 12, 2006.

2.    BRIMSTONE STEAKS, INC. filed a Notice and Petition for
Appeal with this commission on January 2, 2007.

3.    On April 4, 2007, the Illinois Liquor Control Commission
conducted a hearing on BRIMSTONE STEAKS, INC.'S appeal of the
denial by the Local Liquor Control Commission.

4.    The Illinois Liquor Control Commission ordered that the
Local Liquor Control Commissioner's Order dated December 12, 2006,
denying BRIMSTONE STEAKS, INC.'S liquor application be affirmed.



# EXHIBIT B

CODE
City of
PEORIA, ILLINOIS

Codified through
Ord. No. 16237, enacted Jan. 22, 2008.
(Supplement No. 54, Update 1)

Preliminaries

CODE
CITY OF
PEORIA, ILLINOIS

_____

Published by Order of the City Council

_____

Adopted April 20, 1993

Effective May 1, 1993

_____

Published by Municipal Code Corporation

Tallahassee, Florida  1993

CURRENT OFFICIALS

of the

CITY OF

PEORIA, ILLINOIS

_____

James E. Ardis, III

*Mayor*

_____

TABLE INSET:

of the United States in the conduct of his place of business.

(b)  In addition to the foregoing information, such application shall contain such other and further information as the mayor may, by rule or regulation not inconsistent with the law, prescribe.

(c)  If such application is made in behalf of a partnership, firm, association, club or corporation, then the same shall be signed and sworn to by at least two members of such partnership or the president and secretary of such corporation or club. The applicant shall submit with the application documentary proof of his interest in the premises, whether by lease, deed, or otherwise; and in case the applicant is the owner of the premises, all outstanding mortgages against the premises.

(Code 1957, § 3-31)

## Sec. 3-55.  Financial disclosure of applicant.

(a)  Each applicant, upon filing of an original application, and each licensee, upon application for renewal of an existing license, shall file with the city clerk in duplicate a financial statement on forms prescribed by the mayor, which shall include:

(1)  On an original application, a detailed statement of assets and liabilities of the business, and upon a renewal application if the mayor, at his option, so desires.

(2)  The names and addresses of all secured creditors and a description of the security interest of each.

(3)  The names and addresses of all creditors who have any right to control the use or disposition of the business or any asset thereof.

(4)  The name and address of each creditor who holds indebtedness of the business totaling in the aggregate 20 percent or more of the net worth of the business.

(5)  A detailed profit and loss statement for the last preceding business year, if the mayor, at his option, so desires.

(6)  In the case of a corporation, a copy of the latest annual report required to be filed pursuant to section 157.95 of the Business Corporation Act of Illinois (805 ILCS 5/1.01).

(7)  A detailed description of all agreements or obligations which purport to bind any successor to the present applicant or licensee to continue to purchase, rent or accept any goods, wares, or services from a specified supplier thereof.

(b)  The financial statements required to be filed by this section shall be confidential except for official purposes, and it shall be unlawful for any person to divulge such information except for official purposes or under order of a court of competent jurisdiction.

(Code 1957, § 3-33)

## Sec. 3-56.  Submission and disposition of applications.

(a)  All applications for licensees to sell alcoholic liquor at retail and supplemental licenses as authorized by this article shall be submitted to the mayor by filing in the office of the city clerk. A nonrefundable filing fee of $400.00 shall be paid for filing an initial application for a license; except that where the applicant currently holds a valid license to sell alcoholic liquor at retail in the city, the filing fee shall be $100.00. The fee shall be separate from all other fees set forth in this article. All such applications shall be filed duplicate in the office of the city clerk and shall be accompanied by the deposit of a certified cashier's check, a money order, or cash in the full

amount of the license fee required by be paid for the kind of license applied for, which fee shall be returned to the applicant if such application is denied. The original of such application shall remain in the office of the city clerk as a permanent record. The city clerk shall forthwith deliver a copy of such application together with all attachments to the superintendent of police who shall then cause a thorough investigation to be made into the fitness and eligibility of the applicant for the license.

(b)  Within 30 days of the receipt of the application by the superintendent of police, he shall report to the mayor the results of his investigation along with his recommendation whether the application should be granted or denied or held for further investigation, including the reasons for such recommendation.

(c)  Within ten days of the receipt of the investigation report and recommendation of the superintendent of police, the mayor shall notify the applicant that his application is granted, denied or held for further investigation. The period of such additional investigation shall not exceed an additional 30 days unless otherwise agreed to by the applicant. Upon the conclusion of such additional investigation, the mayor shall advise the applicant in writing whether the application is granted or denied.

(d)  Whenever an application is denied or held for further investigation, the mayor shall advise the applicant of the reasons for such action.

(e)  The failure or refusal of the applicant to timely deliver any books, records or other documents, or to give any information relevant to the investigation of the application, or his refusal or failure to appear at any reasonable time and place for examination under oath regarding such application, shall constitute an admission by the applicant that he is ineligible for such license and shall be grounds for denial thereof by the mayor.

(Code 1957, § 3-32; Ord. No. 15563, § 1, 12-9-03)

**Editor's note:** It should be noted that the provisions of Ord. No. 15563, § 1, adopted Dec. 9, 2003, become effective February 29, 2004.

## Sec. 3-57.  Furnishing false or misleading information or withholding information on application; failure to cooperate in investigation.

No person shall knowingly furnish false or misleading information or withhold any relevant information on any application for any license required by this article nor knowingly cause or suffer another to furnish or withhold such information on his behalf. No person shall knowingly furnish any false or misleading information to the mayor, the superintendent of police or any person authorized to act in their behalf in the investigation of any application for a license required by this chapter; nor shall any person willfully withhold any information that is relevant to any such investigation when called upon by the mayor, superintendent of police or a person acting in their behalf to furnish such information.

(Code 1957, § 3-32.1)

## Sec. 3-58.  Bond; exemption.

(a)  Each and every applicant for a license under this article shall simultaneously, with the application therefor and prior to the issuance thereof, execute and deliver either a bond in the penal sum of $1,000.00 to the city as obligee, conditioned for the faithful performance of the provisions of this Code and of the laws of the state relating to the sale of alcoholic liquor, and the payment of all taxes in connection therewith, fines and penalties by reason of the violation thereof, with security to be approved by the mayor of the city or such other persons delegated by him to approve the same or a sworn application for bond exemption on forms provided by the city. The maximum liability of any and all securities on such bond shall be limited to the penalty

## ARTICLE III. RETAIL SALE LOCATIONS

### Sec. 3-91. Record of licenses, approved locations; officers to receive copies; numbering of licenses; notice of issuance or revocation.

The mayor shall keep or cause to be kept a copy or record of all licenses issued by him and of all approved locations for the retail sale of alcoholic liquors as indicated by this chapter, and all licenses issued shall be given a number beginning with number one. The city clerk shall furnish the mayor, the city manager, city treasurer, and the superintendent of police with a copy of the licenses issued and the locations approved for the retail sale of alcoholic liquor. Upon the issuance of any license or revocation of any license, the mayor shall give written notice of such action to each of these officers within 48 hours of such action.

(Code 1957, § 3-45)

### Sec. 3-92. Suitability of site.

(a)  The mayor shall not issue any license authorized under this chapter, other than temporary event licenses, unless the site for which the license is to be used has been designated by the city council as being suitable for the retail sale of alcoholic liquors under a specified class of license, as set forth in section 3-52 of this chapter, and such license to be issued conforms to the license classification approved for such site. For purposes of this section, Class B and Class B-1 shall be treated as same class of license, Class E and E-1 shall be treated as same class of license, Class C and C-1 shall be treated as same class of license, C-2 and C-3 shall be treated as same class of license, C-4 and C-5 shall be treated as same class of license.

(b)  The city council and the liquor commission, in determining whether to approve or recommend approval, respectively, of the suitability of a site for the retail sale of alcoholic liquors, shall consider all relevant facts relative to the specified class of license and proposed site, including, but not limited to, the following:

(1)  That the establishment, maintenance, location or operation of the proposed site will not be detrimental to or endanger the public health, safety, morals, comfort or general welfare of the city.

(2)  That the proposed site and use conforms to all applicable regulations of the city's Zoning Code, Appendix B. For the purposes of this section, a site may be rejected even if it is a legal, non-conforming use under the Zoning Code, if the proposed site could not be developed under current zoning regulations.

(3)  That the proposed site and use, when considered separately or in conjunction with other licensed liquor establishments, will not be injurious to the use and enjoyment of other property in the vicinity, including residences, schools, hospitals, places of worship and other businesses.

(4)  That the proposed site will not generate more automobile traffic and/or parking demand than the existing streets and off-street parking can reasonably accommodate.

(5)  That the structure on or to be placed on the proposed site complies with applicable building and fire codes of the city.

(6)  That motor fuel will not be pumped directly into motor vehicles as a part of the business to be operated on the proposed site; provided, however, that this prohibition shall not apply in the case of Class C-2, C-3, C-4 and C-5 licenses.

(7)  That the proposed site will not be injurious to the uses and enjoyment of other property in the immediate vicinity for the purposes already permitted, nor substantially diminish and impair property values with the neighborhood in which it is to be located.

(c)  Prior to granting site approval, the city council may impose any additional conditions or limitations upon establishment, location, construction, maintenance or operation of the proposed liquor establishment as may in its judgment be necessary for protection of the public interest and to secure compliance with the standards specified above. The city council may require such evidence and guarantees as it deems necessary, as proof that the conditions imposed are being and will be fulfilled. Where additional limitations and conditions are imposed by the city council, the same must be implemented prior to the sale of alcoholic liquor unless the city council adopts another date. Failure to fulfill the conditions and/or limitations shall be grounds for revocation of the site approval and liquor license granted for such site after a hearing held pursuant to section 3-29.

(Code 1957, § 3-46; Ord. No. 13508, § 1, 1-5-93; Ord. No. 15596, § 2, 3-2-04; Ord. No. 15625, § 1, 6-1-04; Ord. No. 15673, § 1, 8-17-04)

## Sec. 3-93.  Application for site approval.

(a)  Any owner of real property desiring to have his property used for the purpose of the retail sale of alcoholic liquors must make application to the mayor for approval by the city council of such site for such use. The application shall include a site plan of the property, which plan shall conform to the requirements of the zoning ordinance. A non-fundable filing fee of $150.00 shall be paid for filing each such application. The applicant shall submit with the initial application a complete list of names and addresses of the last person to whom taxes were assessed for any property within 300 feet of the proposed site, together with a sworn statement that the applicant has caused a notice of the application to be sent to all such property owners and caused a notice in the form prescribed by the local liquor commissioner to be posted at the location of the premises, in a place clearly visible from the public way. Such notices must advise said property owners or the public of the pendency of the request for site approval, the date; time and location of the hearing before the liquor commission, and that they have an opportunity to attend and present their input at the hearing.

(b)  The 300-foot distance shall be measured from the nearest point of a licensed building or other licensed property (e.g., a beer garden) to the property line of any other property.

(c)  The mayor will then forward the application to the liquor commission for its recommendation as to the appropriateness of the site for the retail sale of alcoholic liquors.

(Code 1957, § 3-47; Ord. No. 15325, § 1, 5-28-02)

## Sec. 3-94.  Liquor commission to recommend site approval or disapproval.

Within 45 days after the submission of the application for the approval of a site for the retail sale of alcoholic liquors, the liquor commission shall hold a hearing and promptly thereafter recommend to the city council whether such site should be approved for a particular class of license, as is specified in section 3-52, for the retail sale of alcoholic liquors.

(Code 1957, § 3-48; Ord. No. 15325, § 1, 5-28-02)

## Sec. 3-95.  Approval or disapproval by city council.

After receipt of the recommendation from the liquor commission, the city council shall approve

or disapprove the site for the retail sale of alcoholic liquors. If the city council has disapproved a site for the retail sale of liquors only once, no application for the same site and use will be considered by the city council or the liquor commission for a period of six months from the date of disapproval unless the applicant can establish a substantial change in circumstances relating to the reasons for disapproval. If the city council has disapproved a site for the retail sale of alcoholic liquors two or more times, no application for the same site and use will be considered by the city council or the liquor commission for a period of 12 months of the date of the last disapproval unless the applicant can establish a substantial change in circumstances relating to the reasons for disapproval.

(Code 1957, § 3-49)

## Sec. 3-96. Issuance of license.

If a site has been approved by the city council for the retail sale of alcoholic liquors under a particular class of license, such license for the retail sale of alcoholic liquors may be issued by the mayor if the applicant for such license otherwise qualifies under the provisions of this chapter.

(Code 1957, § 3-50)

## Sec. 3-97. Duration of site approval; extensions.

(a)  The approval for the retail sale of alcoholic liquors under a particular class of license at a particular site shall remain with that site as long as there is a continuous use of that site for the sale of alcoholic liquors under the class of license recommended and approved and as long as no liquor license at that location has been revoked by the mayor. A site shall be deemed to be continuously used as long as there is not a lapse at the site of more than 12 months in the regular conduct of the business of the retail sale of alcoholic liquors under that particular class of license.

(b)  If the regular conduct or the business of the retail sale of alcoholic liquors has not commenced at a particular site within 12 months of the approval of that site, such approval shall automatically expire, unless prior to such expiration date the liquor commission has extended the period of time to commence the regular conduct of the business of the retail sale of alcoholic liquors, as provided in this section. The liquor commission shall have the authority, without approval of the city council, to extend the time for commencing the service of alcoholic liquors for a period not to exceed 12 months. In determining whether to grant an extension, the liquor commission may consider the following factors, among others:

(1)  That demolition, construction, remodeling or repair of a structure has been unexpectedly delayed;

(2)  That tenants or other occupants of the premises have failed to timely relinquish possession in spite of diligent effort by the applicant;

(3)  That a liquor license application is pending and has not been approved;

(4)  That circumstances regarding the suitability of the site under section 3-92 of this Code have not materially changed since site approval was granted.

(Code 1957, § 3-51; ; Ord. No. 13610, § 1, 8-3-93; Ord. No. 13629, § 1, 9-21-93)

## Sec. 3-98. Prohibited in residential zoning district.

No site shall be approved for the retail sale of any alcoholicliquors in any residential zoning district as defined in the zoningordinance, except where such sale is incidental to a recreational special

# EXHIBIT C

Mayor Ardis said he received a number of calls from business owners and residents who expressed concern about additional liquor s ales in the area. He said he would support the District Council Member on this issue, due to the neighborhoods' opposition.

Motion to DENY the Application for a Class C-1 (Package Liquor) Liquor License for 3315 N. University Street was approved by roll call vote.
Yeas: Manning, Montelongo, Nichting, S andberg, Spain, Spears, Van Auken, Mayor Ardis – 8;
Nays: Gulley, Turner - 2.

Council Member Sandberg left the Council Chambers.

**(08-145)      Communication from the Interim City Manager and Corporation Counsel Requesting Council Action on the APPLICATION for a CLASS B (Restaurant, Full-Service Bar) Liquor License, with a Subclass 1A (2:00 A.M. Closing) and Subclass 2 (Live Entertainment), for 7807 N. UNIVERSITY STREET, with Recommendation from the Liquor Commission to DENY.**

Corporation Counsel Randy Ray distributed a communication regarding suitability of a site for a liquor establishment and a communication regarding the issue of Or dinance No. 15,518, and how it related to this matter, to all members of the City Council.

Council Member Turner moved to DENY the Application for a Class B (Restaurant, Full-Service Bar) Liquor License, with a Subclass 1A (2:00 A.M. Closing) and Subclass 2 (Live Entertainment), for 7807 N. University Street; seconded by Council Member Montelongo.

Motion to DENY was approved by roll call vote.
Yeas: Gulley, Manning, Montelongo, Nichting, Spain, S pears, Turner, Van Auken, Mayor Ardis – 9;
Nays: None.

Council Member Sandberg returned to the Council Chambers.

**(08-146)      Communication from the Interim City Manager and Communications Manager Requesting Approval of CONVERSE MARKETING to PERFORM DESIGN SERVICES for a LOGO and REBRANDING for the CITY OF PEORIA.**

Interim City Manager Henry Holling explained that development of the 2008 City of Peoria Budget included funds for design of a new corporate identity or logo. He stated it was felt the Indian Head Logo, ad opted in 1975, had served the community well but needed to be refreshed, updated, and revitalized in order to reflect the progressiveness, growth, energy, diversity, and vision of a modern urban community. He added the Peoria of 2008 was much different than the Peoria of 1975. He said those in the private sector recognized that an ounce of image is worth a pound of performance and many locally based firms had redesigned their logos two or even three times in the past 30 years. He said the City of P eoria Corporation could not project and effectively communicate the dynamic and changing dimensions of our progress using decades old tools. He said the M arketing Committee established to select a firm to redesign the city's logo consisted of people both within and outside the City's employment. He said the committee followed due process in reviewing proposals and careful due diligence in recom mending the firm of Converse Marketing.

Interim City Manager Holling said he was informed that the Indian Head logo expense in 1975 was $30,000, which equated to $1 18,000 in today's dollars. He said the process to be